## WILKERSON v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4667.   Decided March 26, 1928.   (266 P. 270.)

*L. A. McGee,* of Price, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, C. J.

Certiorari to review an award of the Utah Industrial Commission denying plaintiff's application for compensation.

It is admitted that on July 20, 1927, the plaintiff, Wilkerson, was in the employ of the Utah state road commission, engaged in driving a road grader toward the east on what is known as the Colton-Duchesne highway. The grader was being drawn by a four-hourse team driven by Wilkerson on the left side of the road throwing a swath of gravel to the left or lower side. While Wilkerson was thus engaged a car driven by Mary Loveland, accompanied by Frank Roth sitting on her right on the front seat, approached from the east on the same side of the road upon which Wilkerson was operating the grader. When the car and grader met both stopped. Wilkerson dropped the reins of his horses and descended from the grader. He went to the right side of the car where Roth sat, and an altercation occurred between him and Roth, in which Wilkerson received a gunshot wound which resulted in a serious injury. Wilkerson applied to the commission for compensation under the Industrial Act. Several hearings were had upon the application and compensation denied. Rehearing was also denied, and the case is before this court for review.

The state insurance fund carries the insurance, and the jurisdictional facts are admitted, except that it is contended by the defendants that the injury received by Wilkerson for which he claims compensation was not the result of an accident arising out of or in the course of his employment. On the other hand, it is contended by the applicant that the injury did occur as the result of an accident arising in the course of his employment. This is the only question to be determined.

The following findings of fact and conclusion found by the commission reflects the commission's view of the evi-

dence and are of sufficient importance to justify quoting them at length:

"That on July 20, 1927, at about 10:30 a. m., applicant was driving a grader east on the Colton-Duchesne highway, and William Allen, another employee of the road commission, was operating the grader; that as they were approaching along the left side of the road throwing a swath of gravel to the lower side at a point about two miles west of the Bamberger monument, Mary Loveland and Frank Roth approached from the east, traveling west; that applicant had made a turn at a curve about 150 feet back of where the car was met; that it was possible for the applicant and William Allen who were on the grader, to see the approaching car for a distance of approximately 800 feet; that as the car approached the grader, applicant swung his horses to the right across the road and stopped them, thus completely blocking the car from passing to the right while the grader blocked passage to the left; that applicant threw the lines down, walked around the team, went up to the car and started to beat Roth, who was sitting in the car; that in defending himself Roth reached under the seat and got hold of a gun, and during the ensuing struggle shot applicant in the right thigh, the bullet ranging downward and fracturing the lower third of the right femur; that applicant fell on the running board and rolled off into the road at the same time calling to Roth not to shoot him again; that Mary Loveland, who was driving the car, got out and went to Wilkerson to help him; that William Allen, who was at the grader wheel, had got down from the grader and started around to the car when the shot was fired; that he did not hear any conversation or see what transpired at the car, his vision being obscured by the team; that when Allen came around in front of the team where he could see what had happened, he was instructed by applicant to straighten up the team and let Roth pass; that he did so and Roth drove by, stopped the car, picked up Mary Loveland, and proceeded toward Colton; that Wilkerson was assisted into a stage coach which had driven up and taken to his home near the Bamberger monument; that Dr. Melrose, of Price, was called and gave treatment; that Wilkerson was hospitalized in the Price City Hospital and was confined there up to and including the date on which the hearing in this case was held; that Frank Roth had lived in the same vicinity in Carbon county as applicant for something over a year and at times had worked for applicant, during which time he lived at applicant's home; that at other times he visited applicant and his family and stayed with them as a guest for a few days at a time; that preceding the incident on the Colton-Duchesne road, at which time Roth wounded the applicant, some ill feelings on

the part of Wilkerson developed; and that about five days prior to said shooting the applicant, in company with his brother-in-law, went by automobile one night to the Loveland home where Roth was staying and called Roth out of the house; that Roth went out to the car; that applicant demanded of Roth to tell him where his still was; that Roth denied knowledge of its whereabouts, whereupon applicant began to abuse Roth and throw missiles at him, one of which struck him on the shoulder, as a result of which Roth's arm was partly disabled at the time of the hearing of this case.

"Conclusions.

"In view of the foregoing facts, the commission concludes that J. Lem Wilkerson was injured on July 20, 1927, by being shot by Frank Roth at the time and place alleged in the application; that Roth, who inflicted the injury, was a third party; and that the injury was not inflicted upon applicant because of his employment, but that it resulted from causes entirely separate and apart from his employment and was the culmination of a personal grievance of Wilkerson against Roth, and that therefore compensation should be denied."

While there is a conflict in the evidence as to some of the facts found by the commission, the findings, in our opinion, are amply sustained. There is evidence to the effect that when the grader and the car met on the highway both were on the same side of the road; that Wilkerson turned his horses to the right obstructing the entire width of the road so that the car could not pass on either side; that he dropped the reins of the horses, descended from the grader and went to the side of the car where Roth sat in the front seat and commenced to fight him; that this continued until Roth obtained his gun, which was under the ■ seat; that Roth fired the gun either intentionally, or that it accidentally went off in the scuffle. It is immaterial for the purpose of this case whether it was intentional or accidental. The sole question here is, Was the injury to Wilkerson the result of an accident arising in the course of his employment? The foregoing is the substance of the evidence relating to the altercation, as given by Mary Loveland and Frank Roth. It appears also from the evidence

that there was ill feeling between Wilkerson and Roth. The undisputed evidence shows that only a few days before the occurrance hereinbefore detailed Wilkerson went at night to the house where Roth was stopping and sent for Roth to come out to Wilkerson's car, and that Wilkerson asked, "Where is my still;" that Roth said he did not know; that Wilkerson called him a vile name and threatened to kill him; that Wilkerson jumped out of the car and hit Roth with a rock and continued to throw rocks at him until Roth got into the house; that Roth had not seen Wilkerson after that until they met on the highway. Roth stated that the rock hit him on the shoulder, and it was not well at the time of the hearing. Wilkerson admitted that he had had trouble with Roth before. He said Roth had been staying at his house and when he left Wilkerson lost a gun; that when he met Roth on the road he intended to talk to him about the gun; that he had never had a chance before. Wilkerson denied that he fought Roth when they met on the road, and insisted that Roth shot him without provocation. He stated that he tried to take the gun from Roth but was unsuccessful.

The foregoing is the substance of the evidence upon which the commission based its findings of fact and conclusions.

The injury to Wilkerson was caused by a third person concerning matters in no manner connected with the employment. The Industrial Act undertakes to protect the employee in certain cases where the injury is caused by a third person, but it is only where the injury is inflicted *because of the employment*. Compiled Laws Utah 1917, § 3112, provides:

"The words 'personal injury by accident arising out of and in the course of employment' shall include an injury caused by the willful act of a third person directed against an employee because of his employment."

Even though an employee is employed on the very day of an accident, as in the instant case, it cannot be said he

is in the course of his employment where he steps aside to engage in an altercation with some third person concerning a personal grievance wholly unrelated to matters connected with his employment. Such case does not fall within the provisions of the statute above quoted.

In the opinion of the court the findings and conclusions of the commission are sustained. The award made by the commission is therefore affirmed.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.