lation of the commerce clause of the federal Constitution.

For the reasons assigned, the judgment of the Court of Appeal is affirmed at the relator's cost.

(132 So. 117)

**BROWN v. VACUUM OIL CO.**

No. 30845.

Dec. 1, 1930.

E. F. Gayle and C. V. Pattison, both of Lake Charles, for applicant.

Pujo, Bell & Hardin, of Lake Charles, for respondent.

THOMPSON, J.

This is a suit by an employee of the defendant for compensation for an accidental injury alleged to have been received in the course of plaintiff's employment and arising out of such employment.

The defense is that the plaintiff at the time of the accident was not performing any services arising out of and incidental to his employment, but was doing an act entirely foreign to his employment though during the period of his employment.

It is alleged that plaintiff was a member of a crew drilling a well for defendant. That in connection with the work a water hose was used to wash the mud from the derrick floor, and that the plaintiff at the time of the accident, instead of using the hose for the purpose intended, was making use of it to throw water on Hasha, a coworker.

That Hasha resented the action of plaintiff, a scuffle ensued over the possession of the hose, and in this scuffle the plaintiff was injured.

This defense was sustained by the district judge, and plaintiff's suit was dismissed.

That judgment was affirmed by the Court of Appeal (128 So. 691).

The case is before us on an order of review.

There is some conflict in the evidence, but no serious variance as to the cause of the accident and as to the manner in which it happened.

The plaintiff was employed by the defendant, and among the duties under his employment was that of using a water hose to wash off the mud that accumulated from time to time on the floor of the derrick. The trial judge correctly found that on the night of the accident the plaintiff had washed off the floor of the drilling rig and was washing the mud off his trousers and shoes when he was tackled from behind by a fellow employee, in a friendly scuffle, and was thrown to the floor and injured.

It appears that the plaintiff was inexperienced and was very awkward in the use of the water hose and at different times had caused water from the hose to be thrown on a number of his coworkers.

Whether this was done on purpose and intentionally does not affirmatively appear from the evidence.

None of the witnesses saw the plaintiff turn the hose on Hasha, the man who engaged the plaintiff in the scuffle for the hose. Hasha says himself that he did not see plaintiff throw the water on him, as he was some distance away and had his back towards the plaintiff.

Burleson, the driller who was in charge of the operations and under whom the plaintiff was working, testified that Brown had wet him several times. That he wet Carl Lee and Hasha and himself at the same time.

That Brown threw the hose that way when he was washing the floor and he could not say whether it was accidental or on purpose. That he told Brown to be careful with the hose and "warned him not to wet us any more."

Burleson treated the matter so far as he was concerned as a mere trifle and said that as to a little thing like a water hose he might wet Brown himself.

In the light of the testimony of Burleson, it is not reasonable to assume that Brown purposely turned the hose on his superior. As we have said, Brown was the helper of Burleson and was under his direction.

None of the parties resented the act of Brown, except Hasha.

Conceding however that Brown did purposely turn the hose on Hasha and wet him on the occasion of the accident, and conceding that this act of Brown could be construed as a sufficient provocation for Hasha going to Brown and engaging him in a friendly scuffle for the possession of the hose in order that he might retaliate by wetting Brown, does such fault on the part of Brown bar him from recovery of compensation for the injury resulting directly from the scuffle for the possession of the hose?

It must be remembered that Brown was at his post of duty and in the performance of his duty. He had just finished washing off the floor and was using the hose in cleaning the mud off of his trousers and shoes when Hasha came up behind him and grappled with him in an attempt to get possession of the implement of Brown's employment.

Brown did not leave his place of work, he did not surrender the hose voluntarily, and the scuffle in which he slipped was of momentary duration. It can hardly be said there-

fore that he voluntarily abandoned his work and engaged in an act foreign to his duties.

The district judge and the Court of Appeal, 128 So. 691, seem to have attached great importance to the act of throwing water on Hasha which they construed as a fault and an invitation to Hasha to abandon his work and go to Brown and engage in the scuffle. And having brought about the scuffle, Brown ceased momentarily though it was, his employer's business and shut himself off from recovery for the accidental injury.

Section 38 of Act No. 38 of 1918, p. 60, declares that the word "accident," as used in this act, shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event happening, suddenly or violently, with or without human fault and producing at the time objective symptoms of an injury.

█ █ And this court has held that whether employer, employee, or fellow employee is guilty of negligence resulting in injury to employee is immaterial, as affects employer's liability under Employer's Liability Act (Act No. 20 of 1914, as amended). Garcia v. Salmen Brick & Lumber Co., 151 La. 784, 92 So. 335; Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248, 249.

It is therefore immaterial in this case whether Brown was guilty of a fault in throwing water on a fellow employee, for, as we have seen, fault and negligence cannot be pleaded against him.

It is true the cause of Hasha's going to Brown was his belief that the hose had been turned on him purposely, but the immediate and proximate cause of the injury to Brown was his slipping on the wet floor as a result of the scuffle brought about and forced upon Brown by his coworker. Brown would not have been engaged in the scuffle had not Hasha

gone to him and started it. It can hardly be said therefore that Brown had voluntarily turned aside from his work, and that therefore the accident was not in the course of his employment and did not arise out of his employment.

Had Brown left his work and gone down to where Hasha was and engaged him in a scuffle, then a different situation might have been presented.

It might then have been well said that the employee had ceased his master's work and then gone off to engage in a frolic or "horseplay," whatever that may mean.

But Brown remained at his work and was actually working when Hasha rushed upon him for the purpose of taking the hose away from him.

The defense here made and the ruling of the court in sustaining it is without precedent in the jurisprudence of this court.

The ruling introduces a new as well as a novel defense on the part of employers to avoid payment of compensation fixed by the statute, a defense not within the contemplation of the statute.

In the Ferguson Case, supra, in considering the question as to whether the accident was one arising out of the employment, we said:

"The moment we begin to indulge in hairsplitting distinctions in cases of this kind, that moment we approach the danger line of reading into the statute the defense that the employee assumes the risks of his employment."

In the case of Guderian v. Sterling Sugar & Ry. Co., 151 La. 60, 91 So. 546, we held that, where a foreman reprimanded and discharged an employee and was assaulted and injured by the employee as a result of the discharge,

and while he, pursuant to his duty, was settling with the employee, the injury arose out of and in the course of the employment, though he (the foreman) was not without fault, in that he charged the employee with lying, and resisted the assault by striking the discharged employee with a broom.

In the case of Conaway v. Marine Oil Co., 162 La. 148, 110 So. 181, compensation was denied the parents of Conaway, who was killed by the accidental shooting by a fellow employee.

The court held that there was no causal relation between the source of his injury and the character of his employment. That Conaway's employment did not expose him to the danger of accidental shooting, nor was there any allegation that the revolver belonged to the employer and was kept on the premises for protection and possible use in defense of defendant's property.

The court could not find that there was any feature of Conaway's employment which was a contributing or proximate cause of his injury.

In the instant case the water hose was an instrument of the employer and was used by the employee in performing the work assigned him. It was the hose that put the water on Hasha.

It was the wetting that caused Hasha to go to Brown. It was the hose that wet the floor which caused Brown to slip and fall. There was therefore a direct causal relation between the source and cause of the injury and the nature and character of Brown's employment.

But for the hose there would have been no wetting of Hasha. But for the wetting there would have been no scuffle, and but for the wet floor in all probability there would have been no fall of Brown and resulting injury.

There was a case in all respects quite similar to the instant case before the Court of Appeal, Parish of Orleans, Schexneider v. General American Tank Car Corp., 5 La. App. 84.

In that case the employee was accidentally shot and killed by a fellow employee, a night watchman.

It appeared in that case that the watchman had "punched" out for the day and Petrolia, a water boy, had "punched" in. The watchman waited for the water boy who was going for his first bucket of water. The watchman hollered to the boy, who in a playful way stooped down to pick up a piece of gravel saying, "Don't call me that."

The watchman said, "Look what I got?" holding up a pistol. The boy replied, "I eat that," and the gun went off and killed the boy. There was no doubt in the mind of the court that the killing was purely accidental.

The defense there made was that the accident did not arise out of the employment, but was a direct result of the "horseplay" and skylarking which took place between the watchman and the water boy.

The syllabus by the court which correctly reflects the decision is as follows:

"A water boy, accidentally shot and killed by a fellow employee, a night watchman, due to the mutual indulgence in horse play in which the night watchman brandished his revolver in a mocking spirit of hostility, may be said to have been injured and killed in the course of and his injury to have arisen out of his employment."

An application for a review of that case was denied by this court.

The instant case is a much stronger case in favor of the employee than was the case cited. There, at the time of the accident the so-called "horseplay" was mutual, but here Brown was seized upon by Hasha, and the part Brown took in the scuffle he was forced to do in order to keep possession of the hose and prevent Hasha from getting it.

Another case which may be appropriately referred to is the case of Stark v. State Industrial Accident Commission, 103 Or. 80, 204 P. 151, 156.

In that case Stark and a fellow workman were playing with an air hose and struggling for possession of it, in order to turn it on each other. Stark got possession of the hose and turned and ran. In doing so he stumbled over a block and got the hose in such a position that the air was blown into his rectum, causing peritonitis and death.

The court said: "It was an unexpected accident, but nevertheless may reasonably be said to have arisen out of and in the course of the employment. It was an incident of such employment by reason of the appliance used in the work, and the custom which prevailed of the employees, without the infraction of any enforced rule of the establishment, diverting the use of the air hose to sport. The play which had been going on * * * was entirely mutual. The question as to who started the sport can become material only for the purpose of fixing the fault, and as we have already pointed out, fault of the injured employee under certain conditions, such as prevailed in this case, does not constitute a reason for not allowing compensation."

It was further said in that case and which is very pertinent here:

"In several of the cases it is indicated that where the injury is caused on account of the general surroundings of the place in which the injured employee is laboring and particularly where the instrument or appliance which is a part of the plant and used in the prosecution of the work is what causes the injury, or is a concurring cause, the accident may be said to arise out of and in the course of the employment."

In the instant case both the water hose and the wet floor on which plaintiff slipped were part of the surroundings under which Brown was laboring, and, if the appliances named were not the immediate and proximate cause of the accident, they were surely concurring and contributing causes of the accident.

Our conclusion is that the injury sustained by the plaintiff arose out of and in the course of his employment, and that defendant is liable.

█ The plaintiff was receiving wages at the rate of $4.50 per day at the time of the injury, and he claims compensation at the rate of $20 per week for 175 weeks as for the total loss of a leg.

The evidence shows that when Brown slipped on the floor with Hasha on top of him his left leg popped.

He was sent to a physician who testified that he found the injured leg about a quarter of an inch or probably more larger than the uninjured leg. There was a slip at the knee joint which the doctor took to be the cartilage.

The concensus of medical opinion seems to be that when a person has a loose cartilage it will continue to slip at various times and unexpectedly when the person is working or

even walking or taking awkward positions. Of course there is necessarily some pain when these slips of the cartilage occur.

There is no total permanent disabilty to do work of a reasonable character, but the evidence leaves no doubt but there is a permanent partial disability. The doctor who examined Brown in the first instance testified that his ability to do manual labor was reduced 30 per cent.

Act No. 242 of 1928 provides, as compensation for the loss of a leg, 65 per cent. of the wages during 175 weeks.

The statute also provides that in all cases involving a permanent partial loss of the use and function of the member mentioned the compensation shall bear such proportion to the amount named for the total loss of such member as the disability to such member bears to the total loss of the member.

If the plaintiff had suffered the loss of the use of his leg entirely he would have been entitled to 65 per cent. of his wages for 175 weeks, which would have been $20.47 a week.

. As he has suffered only a loss of 30 per cent. of the use of the leg, it follows that he is only entitled to 30 per cent. per week of the amount due him if he had lost his leg for a period of 175 weeks, say $6.14 per week.

The judgment of the Court of Appeal is set aside, and it is now ordered that the plaintiff Jesse J. Brown have judgment against the defendant the Vacuum Oil Company for the sum of $6.14 per week for a period of 175 weeks beginning August 5, 1929, together with 5 per cent. per annum on each weekly installment from the time the same became due or shall hereafter become due.

The defendant is to pay the costs of all courts.