GOINS v. SHREVEPORT YELLOW CABS, Inc.

No. 6233.

Court of Appeal of Louisiana. Second Circuit.

Feb. 4, 1941.

482

Jackson & Mayer, of Shreveport, for appellant.

A. Harvey Broyles, of Springhill, for appellee.

DREW, Judge.

This is a suit for compensation under the Workmen's Compensation Law of this State, Act No. 20 of 1914, as amended.

The judge of the lower court has favored us with a well written opinion which we think is eminently correct both as to findings of fact and as to the law applicable thereto. We therefore adopt it in its entirety as the opinion of this court. It is as follows:

"The plaintiff, Levi T. Goins, brings this suit for compensation for an injury alleged to have been received as the result of the accidental discharge of a pistol in the hands of another employee, which injury is alleged to have been received in the course of plaintiff's employment, and arising out of such employment.

"The material facts in this case are not in dispute. Defendant operates a taxicab business in the city of Shreveport. The plaintiff was employed as one of defendant's drivers at the time the injury was sustained. On September 25, 1939, the plaintiff was stationed on the Travis Street side of the Washington-Youree Hotel. About 8 P. M. o'clock, R. C. Mills, the driver of a cab parked just in front of that of the plaintiff, left with another employee to get coffee at a nearby restaurant. Goins entered the cab operated by Mills for the purpose of being nearer the telephone in the event a call was received.

"After the return of Mills the two men began to examine a pistol kept by Mills in his cab. Goins returned to his cab and secured the pistol furnished him by the defendant company in order to compare the revolvers. While Goins was sitting in the rear of the Mills cab, the pistol being handled by Mills was accidentally discharged. The bullet passed through Goins' face, resulting in the loss of six teeth, described as the right maxillary cuspid, first and second bicuspids, left maxillary second bicuspid, first molar and right mandibular bicuspid.

"At the time of this accident the defendant was having a labor dispute with some of the drivers, who were on strike. On several occasions prior to the labor trouble, cab drivers had been robbed, kidnapped and their cabs stolen. As a result of these troubles, the defendant supplied pistols to the drivers. The drivers were not compelled to carry the revolvers, but the evidence leaves us satisfied that they were encouraged to have these weapons for defense of themselves as well as the property of the defendant company.

"The first question to be decided is whether this injury arose out of and in the course of the plaintiff's employment. We have concluded that under the jurisprudence of this State that it did and therefore plaintiff is entitled to compensation.

"In Holland v. Continental Casualty Company [La.App.], 155 So. 63, 64, which involved a similar question, the Court awarded compensation. In that case the employee was a traveling salesman, who carried valuable merchandise belonging to his employer and with their knowledge began to carry his personal shotgun in the car for protection. In stopping at a filling station for oil and to call on a customer, the plaintiff picked up the gun and while in the act of unbreaching it to remove the shell, it accidentally fired, discharging the contents into his left foot, which was thereafter amputated. In rejecting the defendant's contention that the accident did not arise out of his employment, the Court said:

"'It cannot well be argued that, in view of the character of plaintiff's duties, that of carrying in his car merchandise of considerable value and cash and checks collected from customers, he was not necessarily exposed to greater risks and damages from robbers and highway men, who, of late years, ply their trade boldly, than he would have been exposed to had he not been so employed, and exposed to such risks and dangers to a much greater extent than any one else not so employed. This, as we understand the law, is the true test in such cases.

"'Myers v. Louisiana R. & N. Company, 140 La. 937, 74 So. 256; Dyer v. Rapides Lumber Company, 154 La. 1091, 98 So. 677; Keyhea v. Woodard-Walker Lumber Company (La.App.), 147 So. 830, and cases therein cited (in this case the Supreme Court denied a writ of review, on the grounds that the judgment was correct).

"'Had plaintiff been attacked, robbed of his employer's property, and injured on a

return trip to Alexandria, before he began to carry the shotgun, he would certainly have been entitled to compensation; and, since he has been injured, accidentally, by a weapon carried to prevent being robbed and perhaps injured, it seems clear to us that his case is compensable.'

"In the case of Brown v. Vacuum Oil Company, 171 La. 707, 132 So. 117, 119, the plaintiff was injured while scuffling over a water hose with another employee. The Court found that on the night of the accident, the plaintiff had washed off the floor of the drilling rig and was washing the mud off his trousers and shoes when he was tackled from behind by a fellow employee, in a friendly scuffle, and was thrown to the floor and injured. The defense was that the plaintiff was not performing any services arising out of and incidental to his employment. The Supreme Court held that the injury arose out of and in the course of plaintiff's employment and in rejecting the defense offered, quoted the following language of the Court in the case of Ferguson v. Cady-McFarland Gravel Company, 156 La. 871, 101 So. 248:

" 'The moment we begin to indulge in hairsplitting distinctions in cases of this kind, that moment we approach the danger line of reading into the statute the defense that the employee assumes the risks of his employment.'

"The defendant relies on the case of Conaway et al. v. Marine Oil Company, 162 La. 147 [110 So. 181, 182], in which case an employee of a gasoline and oil filling station was shot by the accidental discharge of a revolver in the hands of a fellow employee. The Court held that the injury did not arise out of and in the course of the employment. As the basis of the decision in that case, the Court said:

" 'In the case at bar, Conaway was shot in the course of his employment by a careless fellow servant. There is no causal relation between the source of his injury and the character of his employment. Conaway's employment did not expose him to the danger of accidental shooting, *nor is there any allegation that the revolver from which the shot was fired belonged to Conaway's employer and was kept on the premises for protection and possible use in defense of defendant's property. We cannot say that there was any feature of Conaway's employment which was a contributing or proximate cause of his injury.* It was no more to be expected that Conaway would

be shot while at work in the manner alleged, and by a careless fellow servant, than that he should be similarly injured at home by a member of his family. It happened that he was shot while at work. He was no more exposed to such injury while at work than otherwise and elsewhere. That it should happen was providential. * *' (Italics ours.)

"In the case of Schexneider v. General American Tank Car Corporation, 5 La.App. [84], 87, the Court awarded compensation in a case where a water boy was accidentally shot by a night watchman. The Court in that case distinguished it from the Conaway case in the following language:

" 'The revolver, from which the shot was accidentally discharged was a part of the watchman's equipment and essential to his employment as a means of protecting his employer's property. This case is very different from the Conaway case and differs also from the cases cited from other jurisdictions where the injury resulted entirely from the pranks of employees without reference to any instrumentality of the employer's business.'

"In the case of Brown v. Vacuum Oil Company, supra, the Court, in distinguishing that case from the Conaway case, supra, said:

" 'The court could not find that there was any feature of Conaway's employment which was a contributing or proximate cause of his injury.

" 'In the instant case the water hose was an instrument of the employer and was used by the employee in performing the work assigned him.'

"Ordinarily, plaintiff's employment as a cab driver might not expose him to the danger of accidental shooting any more than had he not been so employed, but where the employer furnishes his employee with a revolver for the two-fold purpose of protecting himself and the property of the employer from robbers, kidnappers and possible trouble from striking cab drivers, he is exposed to the danger of accidental shooting. Necessarily, the employee would be called on to handle the pistol other than the occasion when actual danger was presented. As the Court said in the Brown case, supra, we would be indulging in hairsplitting distinctions which would be without foundation in law or fact, should we hold under the facts of this case that the injury did not arise out of and in the course of plaintiff's employment.

"The question of the amount of compensation to be awarded in such cases is not without difficulty. Section 8, subsection 1 (d), paragraph 16 of the Workman's Compensation Law, being Act 20 of 1914, as amended, provides as follows:

" 'In cases not falling within any of the provisions already made where the employee is seriously permanently disfigured about the face or head or where the usefulness of a physical function is seriously permanently impaired, the Court may allow such compensation as is reasonable and as is in proportion to the compensation hereinabove specifically provided in the cases of specific disability, not to exceed sixty-five per centum of wages during one hundred weeks.'

"The loss of teeth is a serious permanent impairment to the use of a physical function and therefore compensable under the above quoted section. See Odom v. Atlantic Oil Company, 162 La. 556, 110 So. 754; Smith et al. v. L. H. Gilmer Company of La., Inc., 11 La.App. 336 [123 So. 451]; McBride v. Natural Gas & Fuel Corp., 9 La.App. 513 [119 So. 722]; and Sadler v. May Bros., Inc. [La.App.], 185 So. 81.

"Under the above quoted section of the Compensation Law, the period allowed is fixed at 100 weeks. There is no discretion allowed the Court in fixing the period for which the compensation is due. However, the amount is left in the discretion of the Court, not to exceed 65% of the employee's salary during the 100 weeks. Therefore, in this case we must fix a sum between $3.00 per week and $8.12 which would be the maximum that could be allowed plaintiff under the statute.

"In the Odom case, supra, the Court allowed $3.00 per week for the loss of three lower front teeth. In the Smith case, supra, the Court allowed $5.00 per week for the loss of two teeth and the removal of a portion of the jawbone which left some scars on the face. In the McBride case, supra, the plaintiff was awarded 65% or $20.00 per week, where all of the lower teeth, two upper teeth and some retrusion of the lower jaw was the extent of the injury. And in the Sadler case, supra, the Court awarded $3.00 per week for the loss of two teeth.

"The plaintiff in this case has lost six teeth which have not been replaced at the time of the trial. The defendant, during the time of disability, paid to the plaintiff his full salary, which totaled $43.97, and therefore is entitled to credit for that amount. The defendant has also paid in excess of $250.00 for the medical and hospital expenses.

"We have concluded that the plaintiff should have judgment for compensation at the rate of $5.00 per week during 100 weeks from September 25th, 1939, with legal interest on each payment from its due date, subject to a credit of $43.97, which has been paid by the defendant. The defendant to pay all costs of this suit."

The judgment rendered by the lower court is correct and, accordingly, it is ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.