BARRENTINE *v.* DIERKS LUMBER & COAL COMPANY.

4-7397                                          181 S. W. 2d 485

Opinion delivered June 26, 1944.

**528**

*J. H. Lookadoo,* for appellant.

*Martin, Wootton & Martin* and *Elbert Cook,* for appellee.

HOLT, J. Appellant, J. C. Barrentine, filed claim with the Workmen's Compensation Commission, under the provisions of Act 319 of 1939, seeking an award of compensation against his employer, Dierks Lumber & Coal Company, appellee, for injuries alleged to have been received by him arising out of and in the course of his employment. Upon a hearing before the Commission, appellant's claim was denied and this action of the Commission was affirmed on appeal to the Garland circuit court. An appeal to this court followed.

Briefly stated, the material facts are: In the forenoon of May 29, 1943, appellant and a co-employee, Willie Parker, were working for appellee performing common labor, described by appellant as "tailing the re-saw." A week or two before this date, one of Parker's fingers had been cut off by a saw. The finger stump was still sore and before noon of that day, Parker, says appellant, "mashed his (sore) finger and got huffed up about it. After noon when he went to work, I said something about it; I said, 'I am sorry you mashed your finger over there. It looked like it made you mad. I couldn't help it.' He said, 'No, I wasn't mad at anybody.' It was right after noon. We were there tailing the re-saw. He was in and out. I don't know where he worked that day; he did work over in the box mill. I had gone to get a drink of water, and came back over there, and I don't know whether he was playing with me or mad at me, or what it was, but he hit me over the head with a roll of twine that we used to put oil on the saw. 'Q. Did you say anything to him about how his finger came to be off? A. Yes. Q. Tell the jury what you said. A. There were quite a few things said about it. I had run that saw where he cut his finger off a month or two, off and on, and something was said about his finger—that it would probably keep him out of the army because he cut his hand or finger off—I didn't know whether he had cut his finger

off or not. So I don't think he liked me, to begin with. Q. That was one of the things that prompted him to hit you when you came back from getting a drink of water? Is that correct? A. Yes. Q. Then you and he had a fight? A. Yes. Q. After the fight, what did you do? A. They took him out from where we were working, I don't know where he went to; I didn't see him any more. Q. You didn't get hurt during that fight, did you? A. No'." Following this fight, about two hours later in the afternoon, appellant, while at a drinking fountain, furnished by appellee for its employees, was struck in the back of the head by Parker from behind, and when he regained consciousness, he was in a doctor's office. Appellant did not know who hit him at the time. "Q. Did you learn that the boy came back and knocked you in the head with something? A. Yes, after I got up in the doctor's office, I wanted to know what was wrong with me, and they told me he knocked me in the head. Q. This same boy (meaning Parker) you had had a fuss with had done that? A. Yes."

In its conclusions of law, the Commission said: "The language employed by this claimant and other workmen to Parker was such that would be calculated to engender passion and result in an occurrence such as actually followed, first a fight, and later an assault upon the claimant, Barrentine. The Commission has held from time to time that disability resulting from a personal altercation, in no manner connected with the work of the master, is not compensable. In the opinion of the Commission, this assault was caused by feeling engendered from purely personal causes and had no connection with the work of the master and did not arise out of employment."

The rule is well settled that "findings of facts by the compensation commission are, on appeal, given the same verity that would attach to a jury's verdict, or to facts found by the judge of the circuit court where a jury was waived." *Lundell* v. *Walker*, 204 Ark. 871, 165 S. W. 2d 600.

Unless, therefore, we can say that there was no substantial evidence on which to base the Commission's find-

ings, it was the duty of the Garland circuit court, and this court on appeal, to affirm the Commission's finding.

The applicable provisions of the compensation act, *supra,* are: § 2 (f), which provides: " 'Injury' and 'personal injury' shall mean: Accidental injury or death arising out of and in the course of employment, . . ." and also § 5, which provides: "Every employer subject to this act shall in accordance therewith secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment, without regard to fault as a cause for such injury; provided, that there shall be no liability for compensation under this act when the injury has been solely occasioned by intoxication of the injured employee while on duty, or by willful intention of the injured employee to bring about the injury or death of himself or another."

The question presented is whether appellant's alleged injuries arose out of and in the course of employment. To be compensable, the alleged injury must not only arise in the course of the employment, but also out of the employment—both elements must be present. We think it clear, on the facts presented, that the injury which appellant received at the hands of his co-employee, Parker, grew out of and was the result of a fight or a personal encounter, between these two employees, provoked by appellant, which had no causal connection with appellee's employment. Appellee, employer, was not interested in appellant's personal difficulties with a co-employee.

The Workmen's Compensation Act does not provide for general accident insurance. Its purpose is to compensate only for injuries or losses resulting from the risks to which the fact of engaging in the industry exposes the employee, and appellant's alleged injury here was not the result of such a risk. We, therefore, agree with the Commission's finding, *supra,* that the "assault was caused by feeling engendered from purely personal causes and had no connection with the work of the master and did not arise out of employment."

In the very recent case of *Birchett* v. *Tuf-Nut Garment Manufacturing Company*, 205 Ark. 483, 169 S. W. 2d 574, this court, in upholding the Commission's finding denying compensation to claimant under facts similar, in effect, to those presented here, said: "The theory behind the Workmen's Compensation Act is this: Every industry exposes those engaged in it to certain risks of being hurt, such risks arising out of the mere fact of being engaged in that industry. The policy behind the act is the decision of the people that it is fairer to charge as an expense of the industry (to be paid by the ultimate consumer just as he pays for the raw materials used by the industry) a part of the losses arising from the risks, to which those engaged in that industry are exposed by reason of being so engaged, than it is to let such losses fall entirely upon the employee who gets hurt. But the law does not call for general accident insurance. Its purpose is to compensate only for losses resulting from the risks to which the fact of engaging in the industry exposes the employee.

"It might be that working with, or next to, some quarrelsome workman involves a risk to which an employee might be exposed by reason of being engaged in the industry. But being engaged in an industry does not expose an employee to any risk of being hurt in a fight which that employee starts herself by snatching a paper, which does not belong to her, from the possession of a group of her fellows who are not molesting her in any way, and running off with the paper. Being engaged in the industry cannot be said to be the origin or cause of the fight nor to have created a risk of the fight. The fight did not arise out of her employment. Nor did the fight arise in the course of her employment for she left her employment—her activities in the industry—when she snatched and ran away with the paper," and in *Lundell* v. *Walker*, 204 Ark. 871, 165 S. W. 2d 600, we said: "Where a servant acts without reference to the service for which he is employed, and not for the purpose of performing the work of the employer, but to effect some

independent purpose of his own, the master is not responsible for either the acts or omissions of the servant.''

We conclude, therefore, that appellant was not entitled to recover compensation under the Workmen's Compensation Act, *supra,* that the action of the Garland circuit court in affirming the Commission's finding should not be disturbed, and accordingly, the judgment is affirmed.

ROBINS, J., dissenting. I respectfully dissent from the majority opinion in this case. Injuries resulting from the friction naturally and inevitably caused by human contacts in the factory and workshop are, in my opinion, just as much a part of the risk of industrial life, against which the framers of the Workmen's Compensation Law intended to protect the worker, as are injuries resulting from defective appliances, carelessness, or any other similar cause of disabling accidents.

Judge CARDOZA, in delivering the opinion of the New York Court of Appeals, in the case of *Leonbruno* v. *Champlain Silk Mills,* 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522, wherein that court upheld the claim, under the New York Compensation Act, of a workman who had lost an eye as a result of being struck by an apple thrown by another workman in the same factory, correctly stated the rule in this language: ''The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk.''

Mr. Justice CARTER, in his opinion in the case of *Birchett* v. *Tuf-Nut Garment Manufacturing Company,* 205 Ark. 483, 169 S. W. 2d 574, recognized this rule when he said: ''It might be that working with, or next to, some quarrelsome workman involves a risk to which an em-

ployee might be exposed by reason of being engaged in the industry."

Appellant was working with a quarrelsome and high-tempered workman, and this workman assaulted and injured him while appellant was doing his work at. the mill. The conclusion that, under Justice CARTER's statement of the law, appellant's injury was a risk arising from the employment is unavoidable.

I am authorized to state that Mr. Justice McFADDIN joins in this dissent.