JOHNSON *v.* SAFREED.

5-528                                              273 S. W. 2d 545

Opinion delivered December 20, 1954.

*Franklin Wilder* and *Ragon & Morgan,* for appellant.

*Rose, Holland, Holland & Smith,* for appellee.

MINOR W. MILLWEE, Justice.   This is an appeal from a judgment of the Sebastian Circuit Court affirming an order of the Workmen's Compensation Commission denying a claim for compensation made by the appellant, Willie Johnson, against appellee, Joe Safreed, and his insurance carrier.

Appellant and Marcellus "Red" Deloney worked for Safreed Construction Company which is owned and operated by Joe Safreed and engaged in the business of constructing street and highway curbs and gutters. Both appellant and Deloney were employed as common laborers, neither being authorized to act as foreman or supervisor though Deloney had been working for the company for about 9 years while appellant had only been so employed for 4 or 5 months on September 21, 1953.   On that date Safreed's Company was engaged in constructing curbing on a certain street in the City of Ft. Smith. Safreed, as was his custom, was working along with his employees and was the sole foreman or supervisor on the job.   He assigned to Deloney and two other workmen the job of grading between forms as they were set in place. It was necessary that more dirt be moved to the place where the grading was being done.   Appellant and another laborer were hauling the dirt in wheelbarrows from a stock pile several hundred feet away.   On one such load Deloney directed appellant to put the dirt at a certain place but he chose to dump it at another spot and a spirited argument ensued.   The two were cursing and threatening to kill each other as Safreed walked up. Safreed decided that one of them had to be discharged and determined that it should be the appellant because of Deloney's seniority.   He told appellant they were going to town and started to the truck with appellant following when the latter turned to Deloney, grabbed him by the collar with one hand and at the same time struck him a very light blow on the shoulder with the other hand or

fist. Safreed intervened, took appellant by the arm and they were walking to the truck when Deloney struck appellant in the head with a pick inflicting the injury for which he sought compensation.

It was further shown that Deloney was in the habit of attempting to "boss" his fellow laborers who resented such unauthorized assertions by him. Appellant also testified that he feared that Safreed might fire him if the latter noticed that appellant was taking orders from Deloney rather than Safreed who gave all orders in connection with the work. Appellant also stated that his reason for grabbing and striking Deloney was that the latter, at the time, had raised his pick off the ground in a threatening manner and appellant feared and thought that Deloney was about to strike him. It was also shown that about two months previously Deloney had threatened appellant with a pick when he refused to carry out certain orders given by Deloney in connection with the work which were contrary to those given by Safreed.

Appellant's claim for compensation was heard by one Commissioner who found that he was not entitled to recover because: (1) Appellant was the aggressor in the affray; and (2) his injury did not arise out of and in the course of his employment. This conclusion was sustained by the full Commission and affirmed by the Circuit Court.

We first consider appellees' insistence that appellant had been discharged and was no longer employed by Safreed at the time of his injury. We have held that the period between discharge and injury must be somewhat longer than the minute, or less, involved in the instant case. In *Lundell* v. *Walker*, 204 Ark. 871, 165 S. W. 2d 600, the discharge and assault occurred before working hours and off the work premises, but in allowing a recovery we said, "the period between discharge and death was too transitory to justify the claim that Walker was not an employee when shot." In that case we also approved the rule followed in nearly all jurisdictions by rejecting the contention that no injury sustained by a participant in an assault is compensable.

It might reasonably be said that the difficulty between appellant and Deloney had its inception in the latter's disposition to "boss" his fellow employees, and that any aggression on appellant's part had ceased at the time he was assaulted with the pick. However, since it is undisputed that appellant struck the first blow, we cannot say there is no substantial evidence to support the Commission's finding that he was the aggressor in the affray.

Now it is undisputed that the ill feeling and altercation between appellant and Deloney occurred because of the work relations, while at work and as a direct consequence of the manner and method in which the work was being done. Hence the controlling legal issue is whether a so-called "aggressor" in a work-connected fight or altercation may recover Workmen's Compensation for injuries received in the altercation. We have never passed on the precise question and there is much conflict in the decisions in those jurisdictions where the issue has been decided. The word "aggressor" does not appear in our Compensation statute. The Compensation Acts of most states contain a provision similar to Ark. Stats., § 81-1305, which provides:

"Every employer shall secure compensation to his employees and pay or provide compensation for their disability or death from injury arising out of and in the course of employment, without regard to fault as a cause for such injury; provided, that there shall be no liability for compensation under this Act where the injury or death from injury was solely occasioned by intoxication of the injured employee or by wilful intention of the injured employee to bring about injury or death of himself or another. . . ."

Until recently a majority of jurisdictions that had passed on the question refused compensation to an aggressor even though the dispute was work-connected. Some of the cases which apparently still support this view are: *Kimbro* v. *Black & White Cab Co.*, 50 Ga. App. 143, 177 S. E. 274; *Fischer* v. *Industrial Comm.*, 408

Ill. 115, 96 N. E. 2d 478; *Merkel* v. *T. A. Gillespi Co.*, 10 N. J. M. 1081, 162 A. 250; *Vollmer* v. *City of Milwaukee*, 254 Wis. 162, 35 N. W. 2d 304; and *Wilkerson* v. *Industrial Comm.*, 71 Utah 355, 26 P. 270.

However, commencing with the opinion by Judge RUTLEDGE in *Hartford Accident & Indemnity Co.* v. *Cardillo*, 112 Fed. 2d 11, *cert. denied*, 310 U. S. 649, 84 L. Ed. 1415, 60 Sup. St. 1100, various courts began to re-examine their position and adopt the view that aggression of the claimant, without more, would not bar recovery for an injury sustained in a work-connected dispute. During the past few years the trend of the cases in line with this holding is such that it may now be said that a majority of the jurisdictions which have examined the issue favor the proposition that aggression does not bar recovery. Some of these cases are: *Newell* v. *Moreau*, 94 N. H. 439, 55 A. 2d 476; *Dillon's Case*, 324 Mass. 102, 85 N. E. 2d 69; *Stulginski* v. *Waterburg Rolling Mills*, 124 Conn. 355, 199 A. 653; *Myszkowski* v. *Wilson & Co.*, 155 Nebr. 714, 53 N. W. 2d 203; *State Compensation Ins. Fund* v. *Industrial Acc. Com'n.*, 38 Cal. 2d 659, 242 P. 2d 311; *Petro* v. *Martin Baking Co.*, 239 Minn. 307, 58 N. W. 2d 731; *Commissioner of Taxation and Finance* v. *Bronx Hospital, et al.*, 276 App. Div. 708, 97 N. Y. S. 2d 120. Other cases pointing in the same direction are: *Traders & General Ins. Co.* v. *Mills* (Tex.), 108 S. W. 2d 219; *Haas* v. *Brotherhood of Transportation Workers*, 158 Pa. Super. 291, 44 A. 2d 776; *Rothfarb* v. *Camp Awanee, Inc.* 116 Vt. 172, 71 A. 2d 569; *Brown* v. *Vacuum Oil Co.*, 171 La. 707, 132 So. 117; *Mutual Implement & Hardware Ins. Co.* v. *Pittman*, 214 Miss. 823, 59 So. 2d 547; *York* v. *City of Hazard*, 301 Ky. 306, 191 S. W. 2d 241; *Leonbruno* v. *Champlain Silk Mills*, 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522. See, also, *Horovitz*, Modern Trends in Workmen's Compensation, 21 Ind. Law Journal 534; 9 NACCA L. J. 65-66; 10 NACCA L. J. 76-77; 11 NACCA L. J. 33-34.

In *Newell* v. *Moreau, supra*, the statute provided that the employer should not be liable for an injury caused in whole or in part by, "intoxication, violation of the law, or serious or wilful misconduct of the workman."

In allowing recovery where claimant was the aggressor, the court refused to read the defense of "aggression" into the statute saying:

"In determining whether the assault is serious or wilful within the meaning of the statute, we consider the misconduct and not the result. The misconduct must be grave and not trivial. Here, as in *Maltais* v. *Equitable Life Assurance Society, supra,* we hold that a simple assault or a battery is not serious or wilful misconduct within the meaning of the Workmen's Compensation Law."

In *Dillon's Case, supra,* the Massachusetts court said:

"The striking of the first blow is not the sole and ultimate test as to whether the injury arose out of the employment. We think it is possible for an injury to arise out of the employment in the broad sense of the workmen's compensation law . . . even though the injured employee struck the first blow. We must constantly remind ourselves that in compensation cases fault is not a determining factor, whether it be that of the employer alone or that of the employee contributing with the fault of others, unless it amounts to the 'serious and wilful misconduct' of the employee which by § 27, as appearing in St. 1935, c. 331, bars all relief to him. Apart from serious and wilful misconduct, the question is whether the injury occurred in the line of consequences resulting from circumstances and conditions of the employment, and not who was to blame for it. . . . So even where the employee himself strikes the first blow, that fact does not break the connection between the employment and the injury, if it can be seen that the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect."

As early as 1938 the Connecticut court in the *Stulginski* case, *supra,* rejected the aggressor defense in the following language:

"The adoption of a rule, that if an injured employee was the aggressor he could not recover compensation, though the injury arose out of the conditions of the employment, would require a definition of terms which would be extremely difficult. Certainly to hold that no matter what provocation and angry words there might have been between the parties, he who struck the first blow, slight though it might be, would be denied compensation would be neither reasonable nor in accordance with sound principles."

And the Minnesota Court made the following observation in *Petro* v. *Martin Baking Co., supra*:

"When the accumulated pressures of work-induced or work-aggravated strains and frictions finally erupt into an affray which results in injury to one of the participants, it is artificial to say that an injury to the one who struck the first blow did not arise out of the employment but an injury to the recipient of that blow did arise out of the employment."

In *Commissioner of Taxation and Finance* v. *Bronx Hospital, supra,* the claimant was killed in an altercation which arose between himself and the man he relieved on the previous shift over the fact that assailant had not properly completed his work. Claimant struck the first blow. In rejecting the aggressor defense under a statute almost identical with § 81-1305, *supra,* the New York Court said:

"The quoted phrase used in the statute 'means something different from and more than mere negligence, or even gross or palpable negligence. The phrase imports deliberateness, and not mere thoughtlessness or lack of judgment. It has been said to involve conduct to which moral blame attaches,—the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its probable consequences. The seriousness contemplated by the statute must attach to the act in the doing of it, however, and not merely to the consequences thereof as they actually develop.' 58 Am. Jur. Work-

men's Compensation, § 200, pp. 708-709, and cases there cited. But no such 'wilful intention' can be spelled out of every aggressive act. A playful punch, an angry word, an impulsive blow is not what the Legislature intended to punish, by depriving workers of compensation. Courts are not justified in reading into the compensation act discarded principles of the common law in order to relieve industry of a liability and place it on the worker.''

Appellees argue, and the Commission found, that the instant case was controlled by the case of *Barrentine* v. *Dierks Lumber & Coal Co.*, 207 Ark. 527, 181 S. W. 2d 485. That case is clearly distinguishable on its facts. There, the fight arose over the assailant's indignation at being accused by claimant of deliberately cutting off his finger to avoid military service. In denying recovery a divided court held that the fight arose out of personal matters which were foreign to, and had no causal connection with, the claimant's employment and, therefore, could not have been said to have arisen out of the employment. Thus it is clear that no work-connected dispute was involved in that case. This was also the theory involved in the decision in *Birchett* v. *Tuf-Nut Garment Mfg. Co.*, 205 Ark. 483, 169 S. W. 2d 574, where the majority made the following noteworthy observation: ''It might be that working with, or next to, some quarrelsome workman involves a risk to which an employee might be exposed by reason of being engaged in the industry.''

Of course, where the aggression of the claimant is so violent as to come within the express legislative exceptions of wilful misconduct or wilful intent to injure, he may not recover even though the assault arises out of the employment. But wilful intention to injure another usually denotes premeditated or deliberate misconduct and it cannot reasonably be said to denote an impulsive or instinctive punch with the fist or similar thoughtless acts which are trivial in origin though serious in result. Horovitz, Assaults and Horseplay under Workmen's Compensation Laws, 216-224. The applicable rule is stated in Larson's Workmen's Compensation Law,

§ 11.15(d), as follows: "The words 'wilful intent to injure' obviously contemplate behavior of greater gravity and culpability than the sort of thing that has sometimes qualified as aggression. Profanity, scuffling, shoving or other physical force not designed to inflict real injury do not seem to satisfy this stern designation. Moreover . . . the adjective 'wilful' rules out acts which are instinctive or impulsive, so that even violent blows might fail to give rise to this defense if they were spontaneous and unpremeditated."

When the foregoing principles are considered in the case at bar, we are convinced that the framers of our statute did not intend to preclude recovery where the aggressive act amounted to nothing more than a light blow on the shoulder with the fist administered impulsively in a sudden altercation by one who was attempting to protect himself from serious bodily injury. We accordingly conclude that the acts of appellant under the undisputed facts were not of that serious or deliberate character necessary or essential to evince a wilful intention on his part to injure Deloney.

The judgment is reversed, with directions to remand the case to the Commission for a determination of the amount of compensation to which appellant is entitled.

HOLT, J., not participating.

GRIFFIN SMITH, C. J., dissents.

GRIFFIN SMITH, Chief Justice, dissenting. The decision undertakes to soften an abrupt departure from conflict with the statute by saying that ". . . where the aggression of the claimant is so violent as to come within the express legislative exceptions of wilful misconduct or wilful intent to injure, [then the claimant] may not recover, even though the assault arises out of the employment." From this the conclusion is drawn that "an impulsive or instinctive punch with the fist or similar thoughtless acts which are trivial in origin though serious in result" are not of a character injecting into the record a question of fact.

The Act provides that "there shall be no compensation where the injury . . . was solely occasioned . . . by wilful intention of the injured employe to bring about injury. . . ."

It is now determined that the wage of physical aggression is not a factual matter for the Commission's consideration, but that "impulsive reaction" accompanied by an assault falls within the realm of legal gradation. We or the circuit court—but not the Commission—appraise motives, actions, and reactions; and where a worker is injured by a fellow servant whom he assaulted (and in the case at bar there was a return to the scene of strife) the transaction may be treated as "horseplay" without factual signification.

It is inconceivable that a man of spirit and courage would fail to react when assaulted; and if the person who thus invites retaliation should happen to misjudge the quality of his victim and come out at the hospital end of disaster, nevertheless he is entitled to compensation because, as here, he "impulsively and without deliberation" returned to the scene of disagreement. There, in a brotherly mood and without intentional volition, premeditation, animus or reflection, he made the assault that no doubt had an unexpected ending. To say the least of it Johnson vindicated his valor at the expense of his physical person, and he now receives compensation through judicial forgiveness and a "liberal" construction of the Act.

I can conceive of disagreements so trivial that a reasonable person would not be expected to anticipate retaliation, but where, as here, the claimant has embarked on a punitive expedition that terminated contrary to his expectations, I think it is error to draw the legal conclusion that the master's purposes were being served, or that the digression from duty was not a self-willed undertaking that relieved the employer of liability for the result.