LOFLAND COMPANY of Arkansas et al
v. Henry SIMPKINS

5-5111                                   448 S. W. 2d 39

Opinion delivered December 22, 1969

*House, Holmes & Jewell,* for appellants.

*Bobbie Jean Barton,* for appellee.

Carleton Harris, Chief Justice. This is a workmen's compensation case. Appellee, Henry Simpkins, received injuries to his skull and left eye on May 23, 1968, when he was struck by a fellow employee while at work for the Lofland Company of Arkansas, one of the appellants herein. A claim was filed for compensation, which was controverted by the company and its insurance carrier. The referee held that the claim was not compensable, and this holding was affirmed by the full commission in a 2 to 1 vote. On appeal to the Pulaski County Circuit Court (Second Division) the order of the commission was reversed, and the cause was remanded to the commission for further adjudication with regard to the amount of disability benefits due, together with medical expense incurred. From this judgment. appellants bring this appeal. For reversal, it is simply asserted that:

"The Circuit Court erred in reversing the Commission since the employee's injury did not arise out of the

course of employment but as a result of 'horseplay' which was unrelated to his employment.''

The facts giving rise to the filing of the claim are succinctly and correctly stated by the commission, as follows:[1]

''Briefly stated, claimant and another man, by the name of Robert Young, were both employed by the respondent employer. On May 23, 1968, while the men were at work, Young temporarily ceased work and threw a piece of wire at claimant, all in a friendly manner. There was no dispute or controversy between them as to the work or job, and the throwing of the wire had nothing to do with their employment or duties. After Young threw the piece of wire at claimant, claimant threw a rock at Young, although it does not appear that he meant any harm, or threw a rock of such size or force as to be calculated to produce physical injury. Young then got claimant's hat and threw it up to Dobbins, a crane operator, and Dobbins threw the hat down on the floor. Claimant then asked Young to pick up the hat, but he would not do it. Thereupon, claimant went over to where Young was and got his hat off his head and held it in his hand until Dobbins came down off the crane and took Young's hat out of claimant's hand and put it back on Young's head. Dobbins then picked up claimant's hat and restored it to claimant. This is claimant's explanation of how it started. It appears that during this time, either before or after Dobbins came down off the crane and restored the hats to the proper owners, that Young got a hammer and shoved claimant a couple of times, but Young did not otherwise use the hammer on claimant. He did, however, start to shove claimant the third time; but claimant, who was sweeping the floor, drew a broom on Young and told him that he had better not do it. Young then gave the hammer to another employee by the name of Isaiah Ranson. When claimant walked away and bent over, Young struck claimant on the head

---

[1]The commission used the nicknames of the persons involved, but we use the actual names.

with an iron pipe, thereby inflicting the injuries forming the basis of this claim.''

The commission stated the question, which is presented in this litigation as:

''* * * whether disabilities arising out of an assault, which began in friendly horseplay, but which had no relation to the work in the sense that they did not concern the work in any manner, and the assault was not over the work, are compensable. There is no contention made that the work, or the performance of it, had anything to do with the assault in which claimant was injured. The only connection between the work and the assault was that the assault occurred at a time and place where the parties thereto were in close proximity to each other for the purpose of doing their work. In fact, they had actually begun their work, but had laid aside the performance of their duties for a short time in order to engage in some friendly horseplay, which horseplay terminated in a criminal assault by one of the parties.''

The commission pointed out that *Southern Cotton Oil Division* v. *Childress*, 237 Ark. 909, 377 S. W. 2d 167, the case relied upon by the claimant, was entirely a horseplay case, and not an assault; also, the airhose, which was used to inflict the injury during the horseplay, was being used by Childress in his employment. It is pointed out that, in *Childress*, the employer had, on prior occasions, acquiesced in horseplay between employees, but that in the case before us, these employees had been previously warned by the employer not to engage in horseplay, and both were acting in disregard of these warnings. Referring to the case of *Johnson* v. *Safreed*, 224 Ark. 397, 273 S. W. 2d 545, also relied upon 'by appellee, the commission distinguished that case by saying that, even though the claimant was the aggressor,

''* * * the assault did arise over the work, an element which is lacking in the present case.''

The commission, and also appellant, mention the case of *West Tree Service, Inc., et al* v. *Hopper,* 244 Ark. 348, 425 S. W. 2d 300, which we will subsequently discuss.

We agree with the trial court that the commission's order should be reversed. While the facts in the case before us are somewhat different from those in *Childress, Safreed,* and *Hopper,* we think they more nearly conform to *Childress.* We see no similarity between this case and *Hopper.* In the first place, the men were not at work in *Hopper,* the opinion very clearly stating that the incident of firing the rifle occurred following lunch, but at a time when the foreman had not ordered the men back to work. The rifle used in firing (which occasioned the loss of Hopper's eye) was the personal property of the foreman, and had never been used in any manner by the members of the crew, either for recreation or while engaged in their work; there was nothing in the record to suggest that the company should have expected such an event to occur. In the case before us, the men were already at work, including Simpkins. As found by the commission, Young temporarily ceased work and threw a piece of wire at claimant, Simpkins responding by throwing a rock at Young, though there is no dispute but that both acts were "horseplay." The hat-throwing incident cited in the recitation of the facts then took place, and Dobbins, a fellow employee, ceased his work on the crane, and restored the hats to their respective owners. Thereafter, Young, angry, struck Simpkins while the latter was preparing to put the broom back on the handle,[2] preparatory to going back to his task of sweeping. Morris Holmes, the foreman, testified that the sweeping being performed by Simpkins was a necessary job, which had to be done at regular intervals.

It is true that the instrument (the iron pipe) with

[2]The sweeping portion of the broom had come off the handle, possibly during the horseplay.

which Simpkins was assaulted, was not being used in the work being performed at the time, though it did belong to the company, and was used in other types of work, and in this respect, the facts are different from *Childress*, where claimant was injured by an airhose which was being used in the work being performed before the horseplay commenced. It is also true that in *Childress*, horseplay had been tolerated, while in the instant case, the employees had been repeatedly warned to refrain from such acts; however, the testimony of the various employees made it very clear that, despite the warnings, horseplay continued, and was engaged in practically every day by some of the workers.[3] Simpkins had been previously fired, though it appears that his dismissal was because of remarks made to his foreman, rather than because of engaging in horseplay on the job. Be that as it may, he was re-hired, irrespective of past conduct.[4]

We agree with the logic employed by the dissenting commissioner, Harrell G. Mays, who, after pointing out that the law is well settled in this state that injuries resulting from horseplay are compensable, said:

"In this case the claimant and a fellow employee were engaged in horseplay which led to an assault. The evidence reflects that the assault was a direct consequence of horseplay which the employer knew that his employees engaged in. The employment brought the employees together and because of the employment association they engaged in horseplay which is a reasonable activity that is expected of men working together. When they are thrown together by reason of their employment

---

[3] Isaiah Ranson testified relative to horseplay: "Well, that's an every day habit. Everybody in the shop mostly. We have been told a hundred times ........ Q. Have you been told not ........ A. We have been told. That's an every day habit. Even I ........ I'm assistant shop foreman and even I play and that's an every day habit. It still goes on. After this accident happened it still goes on."

[4] Both Simpkins and Young were fired after the present altercation.

and engage in horseplay, it is also reasonable to expect that fights or assaults will ensue from some cases of horseplay. *It seems unreasonable and inconsistent to say that an injured employee may be compensated for his injuries resulting from horesplay but that he cannot be compensated for injuries resulting from an assault arising out of the horseplay where the chain of causation remains unbroken."*[5]

As pointed out in the italicized language, the chain of causation remained unbroken; the occurrence under discussion turned in a "split second," from horseplay into anger—but was Simpkins any less injured because Young lost his temper? Was Simpkins more guilty of disregard for his duties because he was criminally assaulted, rather than being accidentally injured? To ask these questions is but to answer them, and, in fact, it is established that Simpkins did not commence the horseplay, and further, it also definitely appears that he had returned to work, or was preparing to do so, when the injuries occurred. In this respect, he stands in an even better light than the claimant in *Childress,* the latter having been the instigator of the horseplay, and actually being injured by the very instrument he was endeavoring at the time to use on a fellow employee. We can see no logical reason why Simpkins should be denied compensation simply because his assailant had become angry during the horseplay that had previously ensued.[6] In either instance, the company's interests are not being advanced, but this last argument was held to be without merit in *Childress.* In that case, this court quoted with approval the remarks of the trial court, as follows:

[5] Our emphasis.

[6] The Circuit Court, in its memorandum opinion, stated:

"* * * To deny recovery, in my opinion, would require a finding that there was a deliberate and conscious deviation from employment; that the alleged injury did not result from a spontaneous and unpremeditated impulse. Here, I find that there was no willful, deliberate and total departure from the duties for which claimant was employed and that his claim is compensable."

"The important question which poses itself to this court appears to be whether or not the injury which caused the death of Childress arose out of the employment. In reading *Johnson* v. *Safreed,* 224 Ark. 397, 273 S. W. 2d 545 (1954), it is crystal clear that the Arkansas Supreme Court is no longer using as the test in Workmen's Compensation cases, 'whether the parties here were acting in the furtherance of the employer's business,' as stated in the Opinion of the Commission in the instant case. In the *Johnson* v. *Safreed* case the Arkansas Supreme Court declared that the more modern rule and the more humanitarian doctrine of 'arising out of the employment' would be the applicable yardstick . . .

"Therefore, it is the opinion of this court that *Hughes* v. *Tapley, supra,* is not now the law in this State; that in the instant case the question whether or not the decedent was the instigator is insignificant; that the conditions of employment did induce the horseplay; that the employer had knowledge of the fact that horseplay was engaged in by employees; and that the injury which caused the claimant's death arose out of the employment. Therefore, this case is held to be compensable."

We think the thin line of distinction drawn by the commission majority is unwarranted, and the injury suffered by Simpkins, as surely as the injury to Childress, arose out of the employment.

Affirmed.