## Staunton

CITY OF RICHMOND V. MARGARET JOHNSON, ET AL.

September 2, 1960.

Record No. 5143.

Present, Eggleston, C. J., and Spratley, Miller, Whittle, Snead and l'Anson, JJ.

The opinion states the case.

*James A. Eichner, Assistant City Attorney* (*J. Elliott Drinard, City Attorney*, on brief), for the appellant.

*Jesse M. Johnson* (*Johnson & Schrieberg*, on brief), for the claimants, appellees.

*Reno S. Harp, III, Assistant Attorney General* (*A. S. Harrison, Jr., Attorney General*, on brief), for the Commonwealth.

EGGLESTON, C. J., delivered the opinion of the court.

Margaret Johnson, the widow of Robert M. Johnson, deceased, filed with the Industrial Commission, on behalf of herself and her two infant children, a claim against the City of Richmond for compensation benefits under the Workmen's Compensation Act. Code, § 65-1 *ff*. It was alleged that the deceased was an "employee" of the City of Richmond and was fatally injured "while on duty." The city filed an answer denying that the deceased was its employee within the meaning of the Act, and asserting that he was an employee of the Commonwealth of Virginia. The city further alleged that even if the deceased were its employee, the fatal injury did not arise out of his employment within the meaning of the Act. The Commonwealth, having been made a party defendant in the proceeding, took the position that the deceased was not its employee but was an employee of the city within the meaning of the Act.

The hearing commissioner decided both points adversely to the contentions of the city, awarded compensation to the claimants, and on review the full Commission upheld the award. The city has appealed, making the same contentions which it advanced before the Industrial Commission.

The facts are undisputed. According to the stipulation of the parties, Johnson, the deceased, "was employed as a Deputy High Constable for the City of Richmond" in 1953, and so continued until his death. On December 5, 1958, about 8:30 a. m., Johnson and a fellow deputy, Carlisle M. Slater, arrived at the office of the high constable in the City Hall and received the papers which were to be served by them in the course of their duties. Both deputies were carrying pistols furnished to them by the city and customarily carried while performing their duties. Observing that Johnson was cleaning his pistol, Slater remarked that his weapon also needed cleaning. As Slater was removing his weapon from his coat pocket it was accidently discharged and the bullet fatally wounded Johnson who was standing near by.

The office of high constable of the city of Richmond, the method of that officer's appointment, the duties of his office, the appointment of deputies and their salaries are thus fixed in the city charter (Acts 1948, ch. 116, p. 270):

"Section 19.19. High Constable.—There shall be a high constable who shall be appointed by a majority of the judges of the civil justice

court, civil justice court, part II, and of the police court, part II, and shall hold office at their pleasure. He shall receive such salary as shall be fixed by the council to be paid by the city. He shall be the ministerial officer of the civil justice court, civil justice court, part II, and of police court, part II, in their exercise of civil jurisdiction, and shall execute all civil process, warrants and summonses emanating from or returnable to said courts for service within the city, and shall have the same powers, duties and authority as are prescribed by law for the sheriff of the city of Richmond with respect to the execution of such process, warrant and summonses. He shall appoint such number of deputies as shall be determined by a majority of the judges of the civil justice court, civil justice court, part II, and police court, part II, and approved by the council. They shall hold office at the pleasure of the high constable and shall receive such salaries as shall be fixed by the council to be paid by the city. * * *"

The first question presented is whether such a deputy high constable is an employee of the city within the meaning of the Workmen's Compensation Act. Code, § 65-4, as amended by Acts of 1958, ch. 187, p. 249, thus defines an "employee":

"Unless the context otherwise requires 'employee' includes every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied, except one whose employment is not in the usual course of the trade, business, occupation or profession of the employer; and as relating to those so employed by the state the term 'employee' includes the officers and members of the National Guard, the Virginia State Guard and the Virginia Reserve Militia, registered members on duty or in training of the United States Civil Defense Corps of this State, the forest wardens, and all other officers and employees of the State, except only such as are elected by the people or by the General Assembly, or appointed by the Governor, either with or without the confirmation of the Senate, * * *; as relating to municipal corporations and political divisions of the State, the term 'employee' includes all officers and employees thereof, except such as are elected by the people or by the governing body of the municipal corporation or political division, who act in purely administrative capacities and are to serve for a definite term of office. Policemen and firemen, except policemen and firemen in cities containing more than two hundred thirty thousand inhabitants, and sheriffs and their deputies, town and city sergeants and town and city deputy sergeants, county

and city commissioners of the revenue, county and city treasurers, attorneys for the Commonwealth, clerks of courts of record and county and municipal courts, and their deputies, officers and employees, shall be deemed to be employees of the respective cities, counties or towns in which their services are employed and by whom their salaries are paid or in which their compensation is earnable. * * *"

The contention of the city that a deputy high constable is not an employee of the city but an employee of the Commonwealth is based mainly on the opinion of this court in *Burch* v. *Hardwicke*, 30 Gratt. (71 Va.) 24, 32 Am. Rep. 640. There we held that the mayor of the city of Lynchburg, who was given the constitutional authority to remove certain "city officers" for misconduct, was not empowered to remove the chief of police because, it was said, he was not a city officer, within the meaning of the constitutional provision, but a state officer. In discussing who are state and city officers it was pointed out that "there are many officers, such as city judge, sergeant, clerk, commonwealth's attorney, treasurer, sheriff, *high constable*, and the like," who are "elected or appointed for the city," and that "while their jurisdiction is confined to the local limits, their duties and functions, in a measure, concern the whole state." (Emphasis supplied.) These, it was said, are state officers. (71 Va., at page 34.) The chief of police was held to be in that category. See also, *Lambert* v. *Barrett*, 115 Va. 136, 140, 78 S. E. 586, Ann. Cas. 1914D 1226. On this holding the city argues that the high constable and his deputies are "state" officers and employees and not city officers and employees.

What was said in the *Burch* case is not determinative of the issue here. We are not concerned with whether the high constable of the city of Richmond and his deputies are technically state officers rather than city officers. Our concern is whether they have been classified for compensation benefits in Code, § 65-4, as amended, as state employees or municipal employees. Both sides concede that they are entitled to compensation and differ only as to the classification in which they have been placed by the statute.

It is interesting to observe that policemen, sheriffs, sergeants, clerks, treasurers and Commonwealth attorneys, who are said in the *Burch* case to be "state officers," are now specifically listed in Code, § 65-4, as amended, as "employees of the respective cities, counties or towns in which their services are employed and by whom their salaries are paid." Thus the General Assembly, recognizing that these officers

should be entitled to the benefits of the Workmen's Compensation Act, by classifying them as city, county or town employees, has determined that these political subdivisions rather than the Commonwealth should bear the expense of such benefits. The narrow issue on this phase of the case is whether a deputy high constable of the city of Richmond is intended to be included in the same category. We hold that he is.

Both sides concede, and it is settled in this State, that within the meaning of the Workmen's Compensation Act a deputy high constable occupies the same status as his principal. *Board of Sup'rs of Rockingham County* v. *Lucas*, 142 Va. 84, 91, 128 S. E. 574. Hence, if the high constable of the city of Richmond is an employee of the city within the meaning of the Act, so is his deputy.

Under the provisions of Section 19.19 of the city charter, *supra*, the high constable is "the ministerial officer" of the several specified local courts "in their exercise of civil jurisdiction." He is appointed by a majority of the judges of these courts and holds office "at their pleasure." Hence, he is under the control of these local judges and the Commonwealth exercises no control over him. The same section of the charter provides that the high constable "shall receive such salary as shall be fixed by the council to be paid by the city." Thus the selection and engagement of this official, the power of control and dismissal, and the payment of his salary clearly indicate that he is employed locally, that is, by the city. Under Section 9.07(d) of the city charter, as amended, he is included in the "unclassified service" of the city.[1]

Moreover, Section 19.19 of the city charter, *supra*, specifies that the high constable "shall have the same powers, duties and authority as are prescribed by law for the sheriff of the city of Richmond with respect to the execution of such process, warrants and summonses." In this respect, the duties and services which the high constable performs are similar to those performed by the sheriff of the city, who, under the express terms of Code, § 65-4, is classified as a city employee. It is logical that these local officers should have the same status under the Workmen's Compensation Act.

All of these matters clearly show a legislative intent to classify

---

[1] "§ 9.07. Unclassified Service.—The service of the city shall be divided into the unclassified and classified services. The unclassified service shall consist of: * * * (d) the high constable and his deputies and the justices of the peace provided for in this charter; * * * ." Acts 1958, ch. 185, p. 244.

the high constable and his deputies as city employees and not as state employees.

■ Under Code, §65-7, in order to be compensable, the accident resulting in injury to or death of an employee must be one "arising out of and in the course of the employment." The city concedes that the accident here arose "in the course of the employment," that is, within the period of the employment, at a place where the employee might reasonably be, and while he was reasonably fulfilling the duties of his employment or engaged in doing something incidental thereto. *Bradshaw* v. *Aronovitch*, 170 Va. 329, 335, 196 S. E. 684, 686. But it insists that the accident was not one "arising out of" the employment, because, it says, the hazard of such an accident was not incident to the employment.

In *Bradshaw* v. *Aronovitch*, *supra*, we held that the words "arising out of" the employment should receive a liberal construction in order to carry out the humane and beneficent purposes of the Act. 170 Va., at page 336, 196 S. E., at page 686. See, also, *Southern Motor Lines Co.* v. *Alvis*, 200 Va. 168, 170, 171, 104 S. E. 2d 735, 738.

We further pointed out in the *Bradshaw* case, *supra*, that an injury arises out of the employment when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. 170 Va., at page 335, 196 S. E., at page 686.

Applying these principles, there is ample evidence to sustain the finding of the Commission that the accident with which we are concerned arose out of the employment of the deceased deputy. As has been said, it occurred just after the deputies had gathered the papers which they were to serve in the course of their employment. Because of the nature of their duties it was the custom of all deputies to carry weapons while on duty. This was with the knowledge and consent of the high constable. It was also with the knowledge and consent of the city which furnished the weapons for the purpose. The carrying of the weapons, of course, necessitated their being handled from time to time with the incidental risk of injury or death from an accidental discharge. Thus there was a causal connection between the conditions under which the work was required to be performed and the resulting injury or death from an accidental discharge of a weapon. This was a hazard of the employment to which the deceased

and his fellow deputies were exposed and one not shared by the public at large.

The city cites a number of cases in which compensation has been denied employees for injuries sustained by accidental shooting. None of these involves situations in which employees are permitted or directed to carry weapons in the course of their employment. *Goins v. Shreveport Yellow Cabs* (La. App.), 200 So. 481, is in point. There the employer furnished its taxicab drivers with pistols to protect themselves and the employer's property from robbers and possible trouble from striking drivers. While a cab driver and a fellow employee were riding together and comparing their weapons, one was accidently discharged and the fellow employee injured. It was held to be an accident which arose out of the employment. The court reasoned that necessarily the employees would be called on to handle the weapons, from time to time, and hence each was exposed to the hazard of accidental shooting. The same principles apply in the present case.

For these reasons the award of the Industrial Commission is

*Affirmed.*