LUTHER E. HALL, Judge pro tern.
Plaintiff, Tommie Lee Garner, brought this suit against his employer, Avondale Marine Ways, Inc., seeking workmen’s compensation for total and permanent disability alleging that on or about September 7, 1957 while working in the course and scope of his employment as a rigger or laborer in his employer’s shipyard he received an injury to his back “when a heavy piece of steel dropped from a crane and struck him across the back of his body”. He further alleged by supplemental petition that in addition to his back injuries he sustained “traumatic neurosis, emotional instability and clinical mental depression”, all as a result of the accident.
The testimony adduced by the defendant at the trial developed the fact that the plaintiff had suffered not one, but two accidents— one on September 7, 1957 and another on or about October 15, 1957 when he received injuries as a result of an altercation with a fellow worker.
In rendering judgment for the defendant denying all compensation the District Court in effect held that no compensation was due for any injuries alleged to have been received by plaintiff in the first accident. As to the second accident the District Judge denied compensation “for the reasons that the injuries of which he complains, if there be any, are non-compensable because they resulted from a fight between the plaintiff and another employee in which fight plaintiff was the aggressor”.
Plaintiff prosecutes this appeal from that adverse judgment.
As to the accident of September 7, 1957 the record clearly shows that plaintiff was not struck by a piece of steel dropped from a crane as he alleged and as he testified. The record shows that plaintiff and other workmen were working underneath a steel bottomed barge jacking it up and had raised it from three to four feet off the ground when for some reason a spot or tack weld holding one end of the 10' x 30' steel plates comprising the bottom of the barge gave way and that end of the steel plate sagged down and struck or pushed plaintiff to the ground. He was assisted out from underneath the barge and after resting several minutes walked unassisted over to the company’s first aid station and reported the accident. A great deal of testimony was taken relative to whether the steel plate struck plaintiff on the back of the shoulder or on *705 the lower back in the region of the sacrum and as to whether plaintiff reported to the nurse at the first aid station that his shoulder was injured or whether he reported an injury to the lower region of the back.
After careful review of the testimony we think it clear that the only injury received by plaintiff as a result of the sagging down of the steel plate was to the back of his right shoulder. Indeed, it hardly seems possible for him to have been struck in the region of the sacrum. The barge was three to four feet off of the ground and plaintiff and the other workmen were underneath working in a bent or crouched position. The steel plate did not fall or crush them but the last 10 feet of one end of the plate suddenly popped loose and sagged down about 6 inches until it was stopped by blocks on the other end and by the tension in the steel itself. In his bent or crouched position it would seem impossible for the steel plate which moved only 6 inches to have struck plaintiff over the sacrum.
The nurse on duty at the first aid station and Dr. D. J. Farley who was in charge of the station both testified that plaintiff’s only complaint was with reference to his right shoulder. Dr. Farley further testified that the injury was of a minor character and that after plaintiff visited his office two or three times the shoulder was giving plaintiff ■ no trouble and apparently needed no further treatment; that thereafter he did not see plaintiff for some weeks but that on October 16, 1957 plaintiff came in complaining of his back in the sacro-iliac region and told Dr. Farley that the pain had moved from his shoulder to the lowest part of his back. In Dr. Farley’s opinion this was medically impossible. Dr. Farley “treated his symptoms” for a while and then on November 1, 1957 had x-rays made which revealed a slight depressed fracture of the sacrum with minimal displacement of fragments.
Dr. Farley testified that plaintiff’s condition could not possibly have resulted from a blow on the shoulder, that the fracture could have resulted only from a direct blow over the sacrum. Plaintiff steadfastly denied to the doctor that he had any other accident since September 7, 1957 and on November 7, 1957 Dr. Farley sent him home. At that time Dr. Farley had no knowledge of the fight of October 15th. Plaintiff was unable to work at that time.
The record shows that plaintiff continued to work at his regular job at regular wages during the five weeks following the accident of September 7, 1957 until the middle of October, making an average of over 37 hours per week. During this time he never complained of his back to his foreman or his fellow workers. The first time he complained of his back was after the fight of October 15th.
Although plaintiff categorically denied that he had ever engaged in an altercation with a fellow worker subsequent to September 7, 1957 and steadfastly denied that he had ever received any injuries whatever other than those resulting from the accident on that date, the proof is overwhelming that the plaintiff did have a fight on the job on October 15, 1957 with a fellow workman named Fowler, and that during the fight plaintiff fell to the ground from a scaffold and landed on his “sitting down place”.
It is abundantly clear to us as it was to the District Judge that the accident of September 7, 1957 produced no injuries for which compensation is due, and that the physical injuries of which plaintiff complained at the trial resulted solely from the fall from the scaffold during the fight with his fellow-employee, Fowler, on October 15, 1957.
The facts concerning the altercation of October 15th as testified to by plaintiff’s leaderman, Wilcox, and by three other fellow workmen are substantially as follows:
Plaintiff and Eugene Fowler were working under the direction of leaderman Wilcox and were engaged in taking down a scaffold. Plaintiff was standing on the *706 scaffold which was 2(4 or 3 feet high and Fowler was working on the ground. Wilcox, the leaderman, instructed plaintiff and Fowler to move a board on the scaffold. Plaintiff was standing on one end of this board and when Fowler started to move the other end plaintiff called to Fowler that “it looks like you want to throw me off” or words to that effect. Plaintiff then called Fowler a “dirty word” and Fowler called him a “dirty word”. Plaintiff then asked, “Who are you talking to?” Fowler replied, “I am talking to you” and plaintiff thereupon struck Fowler in the mouth with his fist knocking Fowler down. Fowler got up, grabbed plaintiff by the legs, and threw him off the scaffold, plaintiff landing on the ground “on his sitting down place”, as one witness expressed it, or “on his extreme lower back” according to another witness. Fowler fell on top of him and the two wrestled around until Wilcox stepped in and parted them.
Fowler testified that he had no trouble with plaintiff up to the time of the fight. He also testified that he just pulled on the board, did not twist it, and had no intention of harming plaintiff. Fowler testified that plaintiff hit him twice with his fist and that he made no attempt to hit plaintiff at any time. All witnesses agree that Fowler did not strike plaintiff.
As we have seen the District Judge denied compensation because plaintiff was the “aggressor” in the fight. The judgment was rendered on June 1, 1960 and was in line with the jurisprudence as it existed at that time.
Plaintiff’s counsel argues to us that the “aggressor doctrine” has since been repudiated by the Supreme Court in an opinion rendered on June 29, 1961 in the matter of Frank Velotta v. Liberty Mutual Insurance Company reported in 241 La. 814, 132 So.2d 51, 53.
In that case the plaintiff Velotta and a fellow worker named Bailey exchanged some words in an angry manner. Thereupon in the language of the Supreme Court “Velotta then immediately and impulsively either threw or swung a pair of trousers at Bailey, striking him about the face, without causing injury, and Bailey lashed back with his fist, striking Velotta violently on the jaw, knocking him headlong, his head striking the floor and a locker or bench with the resulting injuries”. The Court of Appeal (Second Circuit) 126 So.2d 445 held that the injuries to Velotta were caused by the wilful intent of Velotta to injure another.
The Supreme Court in reversing the Court of Appeal pointed out that the burden of proving the special defense accorded the employer by LSA-R.S. 23:1081 providing that no compensation shall be allowed for “injury caused (1) by the injured employee’s wilful intention to injure himself or to injure another” rests upon the employer and that this burden is a stern-one, went on to say:
“The appellate courts of this State in many instances have heretofore based their decisions interpreting this provision of the Compensation Act on the aggressor doctrine, generally denying recovery to the injured employee who provoked the assault which resulted in his injury (citing cases). Although the results reached in these cases would not necessarily be erroneous, it would appear that the statutory provision involved does not require a resort to doctrines not there enunciated. The inquiry, under the mandate of the statute, it appears to us, should he limited to whether the employee's injury resulted from the employee’s wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or fist-blow, does not render the conduct of the employee sufficiently serious or grave, and there is no wilful intention to injure one’s self or another under such circumstances. The mere fact that the employee seeking recovery may have been to blame for the fray is not adequate to meet the test. There must be more. Johnson v. Safreed, 224 Ark. *707 397, 273 S.W.2d 545. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.
❖ # * * * *
“It is clear that the action-of Velotta here could certainly not be classified as both premeditated and tinged with some degree of malice, which 'zvilful intention’ as used in the statute seems clearly to imply. It appears instead that his actions were impulsive or the result of an instinctive act — the opposite of intentional or premeditated — and hence not ’zvilful.’
* * * * *
“The fundamental policy of the Act * * * is inconsistent with any notion that recovery is barred by misconduct, fault, negligence or illegality, which amounts to no more than impulsive, emotional misconduct growing out of the duties of the employment and the incidental and necessary relationship to other employees.” (Emphasis ours throughout.)
Obviously the case under review here is distinguishable on the facts from the Ve-lotta case.
In the matter before us the plaintiff was not only the aggressor but his actions were “sufficiently serious and grave” to show an “intention to injure” Fowler and that he had “a reasonable expectation of bringing a real injury” to him when he struck Fowler in the mouth with such force as to knock him down. Furthermore, Fowler’s retaliation, consisting of merely grappling with plaintiff, was in fact much less than plaintiff “could reasonably expect” and his intention could clearly “envision” even greater retaliation.
Was plaintiff’s intention to injure Fowler “wilful” within the meaning of the statute as interpreted by the Supreme Court in the Velotta case?
We have given careful consideration to the language used by the Supreme Court in that case and our appreciation of it is that the words premeditation “tinged with some degree of malice” were used by the court simply as denoting the opposite of “impulsive or as a result of an instinctive act”.
In the case before us plaintiff’s actions were far more than “impulsive, emotional misconduct”. We conclude that plaintiff’s injuries were caused by his “wilful intention to injure another” and hence he must be denied recovery.
For the foregoing reasons the judgment appealed.from is affirmed.
Affirmed.