188 So.2d 479 (1966)
Percy RELISH, Plaintiff and Appellant,
v.
Bill HOBBS, d/b/a Discount Auto Sales, Defendant and Appellee.
No. 1749.
Court of Appeal of Louisiana, Third Circuit.
July 1, 1966.
Rehearing Denied July 28, 1966.
Writ Refused October 11, 1966.
*480 Donald M. Garrett and B. Dexter Ryland, by B. Dexter Ryland, Alexandria, for plaintiff-appellant.
John R. Hunter, Jr., Alexandria, for defendant-appellee.
Before TATE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a workmen's compensation suit. Plaintiff's arm was broken in a fight with a co-employee, Jessie Daniels. The district judge sustained the defense that the injury was caused "by the injured employee's willful intention to injure himself or to injure another,". LSA-R.S. 23:1081. Plaintiff appealed.
Different witnesses gave different versions of the altercation, but the trial judge specifically commented that Albert Keller appeared to be the most disinterested and credible of those testifying. We will therefore follow generally Keller's version of the incident.
The place of employment was a used car lot, where automobiles were also repaired. The plaintiff, Percy Relish, was a $60 per week mechanic. The co-employee with whom he had the fight, one Jessie Daniels, was a $20 per week car washer and helper. Both are negroes. They constantly bickered and quarreled at work.
On the day in question, while their employer was away, Relish told Daniels to go to an automobile parts store and get a tie-rod. Daniels refused and they started cursing one another. Relish grabbed a hammer and threw it at Daniels, but apparently missed, or only hit him on the arm. Then Relish lunged at Daniels, a smaller man, and threw him to the ground and choked him until bystanders pulled them apart. When they got up, Daniels grabbed a shovel and Relish grabbed a wrench and they started at one another again. Daniels succeeded in hitting Relish on the arm with the shovel, fracturing the bone, and apparently this ended the affray.
Plaintiff made two facual contentions, both of which the trial judge correctly rejected. The first was that plaintiff broke his arm while repairing a car before the fight. The second was that Relish, if the original aggressor, had retired from the fight so as to be exculpated from fault for the second encounter when Daniels returned with the shovel. Landry v. Gilger Drilling Co., La.App., 92 So.2d 482. The trial judge held the second encounter was a continuation of the first; and that Relish did not withdraw but, instead, wilfully continued the fight.
The statute under consideration is LSA-R.S. 23:1081 which reads in pertinent part as follows:
"No compensation shall be allowed for an injury caused (1) by the injured *481 employee's wilful intention to injure himself or to injure another."
The recent leading case from our Supreme Court, Velotta v. Liberty Mutual Insurance Co., 241 La. 814, 132 So.2d 51 (1961) involved these facts: Velotta was a 58-year-old white man weighing 100 pounds. He was cleaning the locker room where employees changed uniforms when he engaged in an argument with a young negro employee, Bailey, 19 years of age and weighing 180 pounds. Velotta impulsively swung a pair of trousers, striking Bailey in the face, but not causing any injury. Bailey then struck Velotta violently on the jaw with his fist, knocking Velotta back against a locker and causing serious head injuries. The court held that the aggressor doctrine, a rule of tort law, is not, per se, the test under the Workmen's Compensation Act. In order to be perfectly clear as to the court's holding, we quote at length from the opinion as follows:
"The appellate courts of this State in many instances have heretofore based their decisions interpreting this provision of the Compensation Act on the aggressor doctrine, generally denying recovery to the injured employee who provoked the assault which resulted in his injury. Although the results reached in these cases would not necessarily be erroneous, it would appear that the statutory provision involved does not require a resort to doctrines not there enunciated. The inquiry, under the mandate of the statute, it appears to us, should be limited to whether the employee's injury resulted from the employee's wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or a fistblow, does not render the conduct of the employee sufficiently serious or grave, and there is no wilful intention to injure one's self or another under such circumstances. The mere fact that the employee seeking recovery may have been to blame for the fray is not adequate to meet the testthere must be more. Johnson v. Safreed, 224 Ark. 397, 273 S.W.2d 545. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.

"The defense the employer is entitled to invoke is a statutory one expressed in language that is clear and unmistakable and the superimposing of another doctrine, `aggressor' or otherwise, is not considered appropriate. Hartford Acc. & Ind. Co. v. Cardillo, 2 App.D.C. 52, 112 F.2d 11." (Emphasis supplied.)
As we understand the Velotta case, the court concluded (1) that Velotta's actions, in swinging the trousers, were impulsive, as distinguished from premeditated or malicious and (2) the act was not sufficiently serious or grave that Velotta should have had a reasonable expectation that it would result in a real injury to himself or another.
In Garner v. Avondale Marine Ways, Inc., La.App., 134 So.2d 703 (4th Cir. 1961), our brothers of the Fourth Circuit Court of Appeal gave this same interpretation to the Velotta case. Plaintiff and a fellow worker, Fowler, were standing on a scaffold when they engaged in an argument. Plaintiff finally struck Fowler in the mouth with his fist and knocked him down. Fowler then grabbed plaintiff by the legs and threw him off the scaffold, injurying plaintiff's back. The court distinguished the Velotta case. It held that, whereas Velotta's actions, in swinging the trousers, were not sufficiently serious to show an intent to injure; Garner's actions, in striking Fowler in the face with his fist while on a scaffold, were sufficiently serious, although impulsive, that Garner should have had a reasonable expectation it would result in serious injury to himself or Fowler.
*482 The author of the case note found in 23 La.Law Review 144 praises the Velotta case for rejecting the aggressor doctrine in Louisiana Workmen's Compensation Law, but then criticizes the decision in the following language:
"After stating that wilful intent is the sole test of recovery, the Supreme Court glossed its rule by saying that whether retaliation might reasonably be expected from the attacked employee is the measure of the aggressor's intent. This is unfortunate in that it tends to lead the court's inquiry away from the primary consideration of wilful intent."
Thus, the author of this case note is apparently of the opinion that wilfulness, as distinguished from impulsiveness, should be the sole test. But, the author recognizes that this is not the sole test applied by our Supreme Court in the Velotta case.
We think the Velotta case holds that wilfulness is not the sole test. The court says: "The test (of wilful intent to injure) should involve an inquiry into (1) the existence of some premeditation and malice * * *, coupled with (2) a reasonable expectation of bringing about a real injury to himself or another." This clearly means that wilfulness, as distinguished from impulsiveness, is not the sole test. Every impulsive act is not condoned by the statute. Some acts, even though impulsive, are so serious and so likely to result in real injury, that they must be construed to show a wilful intent to injure.
Perhaps an illustration will best show our meaning. Velotta impulsively swung a pair of pants at Bailey, conduct which was not sufficiently serious or grave to show a wilful intention to injure. But suppose that, after engaging in a heated argument, Velotta, instead of swinging pants at Bailey, had pulled out a pistol and shot at him. Would we say that since the act was impulsive, growing out of work-connected tensions, it did not show a wilful intent to injure? Certainly not.
Applying our interpretation of the Velotta case to the present matter, we think that when Relish threw the hammer at Daniels and then knocked him down and started choking him, this was conduct which, although impulsive, was sufficiently grave and serious that Relish should have had a reasonable expectation the affray would result in a real injury to himself or Daniels. Thus, wilful intent to injure is shown.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
TATE, Judge (dissenting).
The organ of the majority has written his usual lucid, balanced, and sensible opinion. Insofar as the present case is concerned, what is at issue is perhaps compensation only for four month's disability of the injured workman resulting from a broken arm at work sustained in a fight.
The writer reluctantly dissents only because he fears that the majority's misinterpretation of Velotta v. Liberty Mutual Insurance Co., 241 La. 814, 132 So.2d 51, has in effect overruled Velotta's rejection of the aggressor rule as applicable to Louisiana workmen's compensation. The writer fears that indeed the majority has substituted for the old aggressor rule (expressly rejected by Velotta) a fault principle even more restrictive of the rights of injured workmen to recover for injuries resulting from work-tensions and resulting reasonably from the work-environment itself. Duty to the jurisprudential development of workmen's compensation principles thus requires this dissent.
The facts indicate that there was workinduced bad feeling between the plaintiff Relish and his co-workman Daniels stemming over a continuing dispute as to Relish's authority over Daniels when their employer was absent. Commencing with a *483 squabble over Daniels' having given permission (instead of his superior Relish) to a white lady to use the business telephone, the dispute erupted into violence. Daniels refused the plaintiff Relish's request to obtain a needed part from a nearby supply store (which was within the duties of Daniels as helper). Relish thereupon cursed Daniels and invited him to kiss a part of his anatomy not intended for kissing, whereupon Daniels replied to like effect, whereupon Relish threw a hammer at Daniels and leapt upon him. They were separated by bystanders.
The plaintiff Relish, in my interpretation of the evidence, then retired from the affray by going back to the car motor upon which he was working. That he had retired is demonstrated by his having retreated into a cul de sac between the car and the building wall, a position which so handicapped him from continuing the fight as to be completely inconsistent with any intention to do so. In the meantime, Daniels had run around the corner of the building and come back with a shovel up-raised. Alerted by the warning cries of bystanders, Relish (still in the cul de sac) turned around to face the attack and raised or picked up a crescent wrench to ward off the thrusting blows of the spade-end of the shovel, only to have his arm broken.
The majority errs to deny Relish workmen's compensation.
In the first place, even under the old aggressor rule rejected by our Supreme Court in Velotta, Relish is no longer to be penalized since he had retired from the affray. Landry v. Gilger Drilling Co., La. App., 1 Cir., 92 So.2d 482.
In the second place, and more important, to deny Relish compensation under the above circumstances is to give a restrictive and limiting effect far beyond the legislative intent to the provision by reason of which the majority denied workmen's compensation to this employee.
LSA-R.S. 23:1081 provides:
"No compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another * * *." (Italics mine.)
This section further provides that the employer shall have the burden of proving exemption for this cause from compensation liability to an employee injured at work.
In Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51, Noted, 23 La.L.Rev. 144 (1962), our Supreme Court pointed out that the courts must necessarily construe strictly the statutory exculpation of an employer for liability to a disabled workman because of the employee's alleged "wilful intention" to do injury. The court therefore held that compensation should not be denied an employee to blame for a spontaneous and unpremeditated affray in which injuries were received, since the purpose of the statutory exemption was simply to prevent compensation when the workmen's injuries flow from his premeditated criminal conduct of a serious and wilful nature.
With Velotta, Louisiana has thus joined the growing majority of jurisdictions which upon re-examination of the question have overruled prior jurisprudence denying recovery to a compensation claimant because of the aggressor rule. See (both cited in Velotta): 1 Larson, Workmen's Compensation Law, Sections 11.15(c), 11.15(d), 11.16 (1965 ed.); Johnson v. Safreed, 224 Ark. 397, 273 S.W.2d 545 (1954), and decisions from many jurisdictions cited therein. See also: Malone, Louisiana Workmen's Compensation Law (1951) at Section 345 (1964 pocket parts, pp. 187-188).
Citing the landmark case of Hartford Accident & Indemnity Co. v. Cardillo, 72 App. D.C., 112 F.2d 11 (1940), our Supreme Court stated pertinently to the present issue, 132 So.2d 54:
"In the relationship between fellow employees, it is inevitable that their emotions *484 will cause friction between them; and if on such occasions impulsive action provokes retaliation which causes injury, that impulsive action should not preclude the assertion of a claim under the Act * * * The fundamental policy of the Act in departing from fault as a basis of liability and of defense, except as specified therein, is inconsistent with any notion that recovery is barred by misconduct, fault, negligence or illegality, which amounts to no more than impulsive misconduct growing out of the duties of the employment and the incidental and necessary relationship to other employees."
The basic holding in the Velotta case was summarized in the casenote discussing it, 23 La.L.Rev. 144 at 145-147 (see many decisions therein cited):
"In the instant case the Supreme Court recognized that the emotions of employees often cause friction between them. This accords with the present trend of authority that the desirable test for determining the right to compensation in the aggressor cases is whether the circumstances giving rise to the injury were typical of the working environment. * * The court, indicating the wilful intent signified something akin to malice or premeditation, rejected the idea that impulsive violence, per se, justifies application of the statutory defense. This accords with those authorities indicating that the intention of the legislatures, in enacting compensation statutes, was to prohibit the award of benefits only in cases in which the employees entertained a serious criminal intent."[1]
The fight in the present case was directly engendered by work tensions. It was a hot-blooded unpremeditated boiling over of work-antagonisms into physical violence rather than any coolly intentional effort to cause injury. Although the plaintiff Relish may have been more to blame, neither party was without provocation.
Therefore, as I construe the holding in Velotta, the plaintiff Relish's spontaneous and undeliberated entanglement with his co-employee, which resulted from work-tensions boiling over emotionally into a physically violent fight, is not included within the serious and premeditated or coldblooded intentional attempt to injure another such as will bar a recovery for workmen's compensation benefits for resultant injuries.
With a single exception, the decisions to the contrary relied upon by the defendant-appellee antedate Velotta, and in some instances, were directly disapproved of by this later Supreme Court decision. See 132 So.2d 53. However, in Garner v. Avondale Marine Ways, Inc., (La.App., 1 Cir.), 134 So.2d 703, the single post-Velotta decision cited to us by the appellee, our brothers of the Fourth Circuit felt that an injured workman's initial blow was sufficiently serious and grave to provoke the retaliation which injured him, therefore barring his recovery of workmen's compensation; a result consistent with that we have reached herein. I think that the effect of this reasoning, however, is to reinstate the aggressor doctrine expressly disapproved in Velotta, and to rely on dicta in the case rather than its essential holding. See critical comment, Note, La.L.Rev. 144, 147 (1962).
The present majority distinguishes Velotta by saying that the action of the plaintiff workman Velotta in swinging a pair of *485 trousers and striking his antagonist across the face with them could not be expected to produce the retaliation of a violent blow on the face by the antagonist's fist. I am unable to understand this sort of hairsplitting psychologizing. In my opinion, the action in Velotta was just as impulsive and just as likely to provoke the retaliation involved as was the plaintiff's hotheaded and impulsive throw of a hammer (which either missed or struck lightly) when his subordinate refused a reasonable order and cursed him back. The present workman should no more be denied compensation for his work-caused disability than was Velotta.
By the majority's holding, it has either (1) reinstated the repudiated aggressor rule with a different formalized wording or else (2) given Velotta a far more stringent interpretation than was obviously intended by the Supreme Court, which expressly intended to liberalize (not restrict) the receipt of workmen's compensation for injuries received in fights at work.
Under the old aggressor rule, if both workmen had been injured in the fight, only the technical "aggressor" (as deduced by conventional tort analysis) would be penalized by a denial of compensation. Under the majority's rule, as at least one member stated in conference, in the present case both participants should be denied compensation because both used force likely to provoke violent retaliation: Relish, by throwing the hammer in the initial stages of the fight; Daniels, by picking up a shovel and attacking Relish in the (resumed) fight.
In either event, the majority has succeeded in emasculating Velotta and Velotta's adoption of the general rule now obtaining in most American jurisdictions which have considered the question since 1940 (see Larson's citation above).
Once it had been conceded (as it is) that quarrels and fights arising out of disputes concerning the conditions of employment or the respective authority of employees are employment risks against which compensation protection has been afforded, there is little reason to deny compensation to the employee who provoked the altercation. There will always be someone who "started it"; actually, where mutual recriminations from work-tensions are likely, in many cases neither workman will be wholly free from fault.
The compensation principle should not be restricted so as to protect only the mild-tempered non-aggressive worker. Velotta expressly noted that the denial of compensation to a disabled workman on the ground of impulsive fault, 132 So.2d 54, is inconsistent with the fundamental policy of the workmen's compensation act. The majority fails to follow this essential holding of Velotta in finding that the employer defendant, has borne his heavy burden of proving that Relish's injury in the (resumed) fight, when he attempted to ward off a blow by a shovel, was brought on through Relish's own premeditated or malicious intention to injure another.
For these reasons, with the utmost respect for the contrary opinion of my brothers of the majority, I must nevertheless respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents.
NOTES
[1] Aside from treatise summaries, for examples where an employee was injured as a result of an altercation resulting from his premeditated criminal intent of a serious and wilful nature barring recovery, the casenote cites the Louisiana cases of Jenkins v. Cities Service Refining Co., (La.App., 1 Cir.), 44 So.2d 719 (45 minutes after verbal exchange employee attacked fellow employee with a pipe) and Morris v. Young & DeBritton, (La. App., 1 Cir.), 9 La.App. 180, 119 So. 277 (without provocation employee coldbloodedly shot fellow employee.)