GULOTTA, Judge.
This is a suit for Workmen’s Compensation brought by Mosel Armstrong against Jefferson Disposal Company, Inc., plaintiff’s employer, and Highlands Insurance Company, the employer’s workmen’s compensation insurer. Plaintiff, a truck driver, seeks benefits for total and permanent disability caused by injuries sustained from shotgun wounds on June 27, 1969, as a result of an altercation on the employer’s premises between plaintiff and a co-employee.
In denying liability, defendants rely on that portion of LSA-R.S. 23:1081 which provides:
“No compensation shall be allowed for an injury caused (1) by the injured employee’s wilful intention to injure himself or to injure another. * * * ”
Following trial on the merits, judgment was rendered dismissing plaintiff’s demand at his costs. Plaintiff appeals from that judgment.
The issue before us is whether or not in denying recovery to plaintiff the trial judge committed manifest error.
In ascertaining whether an employer shall be relieved of paying compensation because of injury caused by the injured employee’s willful intent to injure himself or another, it is incumbent upon the employer to bear the burden of proof. LSA-R.S. 23:1081; Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961).
The record reflects that four parties were present at the time of the incident: Armstrong, the plaintiff; Carl Melcher, the individual who shot plaintiff and who served as plant maintenance man for Jefferson Disposal; Fred Easter, the shift foreman for the company; and Frank Duskin, a truck driver on the premises at the time. The testimony of these witnesses forms the substance of both plaintiff and defendants’ contentions.
It is uncontroverted that on the date of the accident, the truck plaintiff operated for the defendant company was running hot and plaintiff pointed out the problem to the maintenance man at work, Carl Melcher. Melcher then drove the truck off of the premises to determine what was causing the difficulty. In the meantime, plaintiff went to that part of the plant where trucks were loaded, whereupon the shift foreman, Fred Easter, told plaintiff to sweep this area since he had nothing else to do as long as his truck was not there. Plaintiff refused to sweep because this job was not part of his duties. Shortly thereafter, Melcher returned to the premises with the truck, and plaintiff asked Melcher to have a talk with Easter who had ordered plaintiff to sweep.
From this point, the testimony of the witnesses is conflicting.
Armstrong’s version of the incident is that after the discussion between himself and Easter, he was called over to Easter’s truck where Easter showed him a knife and gun and said something to the effect of “this is what I use”. At this point, Melcher then became involved. Melcher went to his car and obtained a gun, whereupon plaintiff, in fear of receiving injury, tried to run away from the threatening Melcher. At that time, a co-employee, Frank Duskin, who was nearby the plaintiff, also in fear for his safety, tried to run away from *215 Melcher. Easter, according to plaintiff, for no apparent reason, knocked him down while he was attempting to get away. Plaintiff denied ever having swung or thrust a knife at either Melcher or Easter. He further stated that no words had been exchanged between Melcher and himself, but that while he was on the ground and while retreating, Melcher shot and kicked him. Armstrong stated he did not have the knife in his hand at this time but that he had dropped it when he started running.
Melcher’s version of the occurrence on the other hand is completely different from that of plaintiff. Melcher stated that after checking out the disorder in plaintiff’s truck, he returned to the plant where plaintiff complained to him about the request to sweep. However, Melcher related that his reply angered Armstrong. Plaintiff left for approximately five minutes and upon his return began arguing with Easter outside the plant door. He then directed abusive and obscene language at Melcher. Plaintiff, after threatening Melcher, slashed at him with a four-inch knife, missing him by inches, whereupon Melcher turned around and began walking rapidly toward his parked car about 100 feet away. Plaintiff followed Melcher in hot pursuit and, while about three feet from Melcher, again struck at him with the knife. After plaintiff had made a third attempt to strike Melcher with the knife, Duskin and Easter approached the car and Duskin asked plaintiff for the knife. Plaintiff refused to comply and responded with profanity. Armstrong then held Easter around the throat, put the knife under his ear, and threatened to cut him, whereupon Melcher went to his car, took a shotgun out of the trunk, and fired a shot into the ground in an effort to have plaintiff release Easter. Armstrong grasped the barrel of the gun and at some time during the altercation, Melcher unintentionally discharged the weapon. It was this shot that struck plaintiff.
The testimony of Fred Easter essentially relates the events as Carl Melcher described them.
Fred Duskin, also a truck driver, was present only at intervals. However, he stated that plaintiff had swung a pocket knifé at Melcher before Melcher had obtained his shotgun. Duskin testified that he and Easter went over to break up an argument between Melcher and plaintiff. He also remembered plaintiff grasping the gun while the knife was still in plaintiff’s hand. Duskin did not see plaintiff grasp Easter because he went around the right side of Easter’s truck when the others went around the left and his view was obstructed. The next time the parties were in view, Duskin said he saw plaintiff and Easter sprawled on the ground. Duskin also testified that the first shot hit the ground and not plaintiff.
In view of the trial court’s dismissal of plaintiff’s suit, it is apparent that the trial judge accepted Melcher, Easter and Duskin’s versions of the accident. The trial judge correctly rejected plaintiff’s contention that if he were the original aggressor; nevertheless, he retired from the affray and should be exculpated from fault in the second encounter when Melcher returned with his shotgun.
The Supreme Court in Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961) interpreted the special defense provided for by the quoted provision of LSA-R.S. 23:1081 at pages 53 and 54:
“The appellate courts of this State in many instances have heretofore based their decisions interpreting this provision of the Compensation Act on the aggressor doctrine, generally denying recovery to the injured employee who provoked the assault which resulted in his injury.3 Although the results reached in these cases would not necessarily be erroneous,' it would appear that the statutory provision involved does not require a resort to doctrines not there enunciated. The inquiry, under the mandate of the statute, it appears to us, should be limited to whether the employee’s injury resulted *216 from the employee’s wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or a fist-blow, does not render the conduct of the employee sufficiently serious or grave, and there is no wilful intention to injure one’s self or another under such circumstances.4 The mere faFt that the employee seeking recovery may have been to blame for the fray is not adequate to meet the test — there must be more. Johnson v. Safreed, 224 Ark. 397, 273 S.W. 2d 545. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.
“The defense the employer is entitled to invoke is a statutory one expressed in language that is clear and unmistakable and the superimposing of another doctrine, ‘aggressor’ or otherwise, is not considered appropriate. Hartford Acc. & Ind. Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11.” (emphasis ours)
The test as set out by Velotta has been applied and commented upon in several cases. In St. Pierre v. Baifield Industries, Inc., 225 So.2d 96 (La.App. 2d Cir. 1969), Garner v. Avondale Marine Ways, Inc., 134 So.2d 703 (La.App. 4th Cir. 1961) and in Relish v. Hobbs, 188 So.2d 479 (La.App. 3rd Cir. 1966) writ denied, under facts similar to those before us, employees were denied recovery.
The gravamen of this case is whether or not Armstrong’s injury was caused by his willful intention to injure himself or to injure another. In this connection, the employer must show the existence of some premeditation and malice on the part of the claimant together with
a reasonable expectation that injury to himself or another will result. The trial judge obviously concluded that the employer successfully carried this burden.
While the workmen’s compensation statute should be liberally construed for the benefit of the employee and while effort should be made to afford protection to the injured employee consistent with the purposes of the legislation, nevertheless, in this case, we cannot find that the determinations of the trial judge were manifestly in error. The record amply supports his conclusion.
Accordingly, the judgment of the trial court upholding defendants’ special defense and dismissing plaintiff-employee’s claim under the Workmen’s Compensation Act is affirmed. Costs are to be paid by plaintiff-appellant.
Affirmed.